[Crim. No. 6811. Second Dist., Div. Three. Mar. 8, 1960.]

THE PEOPLE, Respondent, v. PATRICIA ANN AVILA, Appellant.

Joseph T. Forno for Appellant.

Stanley Mosk, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

SHINN, P. J.—Patricia Avila was accused by information of assault upon her daughter Deborah with intent to commit murder and in a separate count of attempted murder of Deborah. She was acquitted upon the latter count and on Count I was found guilty of assault by means of force likely to produce great bodily injury. Her motion for a new trial was denied and probation was granted upon condition that she spend one year in the county jail. She appeals from the judgment and the order.

The points on appeal are (1) the offense of which appellant was convicted is one that is not necessarily included within the offense of assault with intent to commit murder, (2) the child Deborah was shown to be incompetent as a witness and it was error to permit her to testify and (3) "The trial court erred prejudicially in resolving the overwhelming conflicts in testimony against your appellant."

If by the third point it is intended to urge insufficiency of the evidence to justify the verdict the discussion in appellant's brief is lamentably inadequate to serve that purpose. The brief does not contain even a pretense of a statement of the evidence. If this were not a criminal case we would not give the point serious consideration. But being a criminal case in which a mother has been adjudged guilty of a serious crime against her daughter, we would not be justified in disposing of the point without giving consideration to the entire evidence and a statement of our reasons for our conclusion.

The court could not have doubted that the events which gave rise to the accusation were the following: appellant had had a falling out with a male companion named Cato, referred to as "Mitts"; in a fit of despondency she adminis-

tered to herself a considerable quantity of barbiturate pills and to her daughter Deborah a substantial number of the same. The child had been put to bed and fell asleep, waking up in General Hospital; appellant lay down on the floor in the child's bedroom. This was some time during the evening, the precise time being undetermined. At about 11:30 p. m., appellant fell seriously ill; she observed the appearance of Deborah and endeavored unsuccessfully to awaken her; she was limp and apparently unconscious. Appellant went across a walkway to an adjoining apartment, roused a friend, Eve Adams, who at appellant's request called the police. Appellant and Deborah were taken to the receiving hospital where the contents of appellant's stomach were removed. Appellant was either unconscious or merely unresponsive. Deborah was unconscious. Both were taken to the County General Hospital. Appellant received treatment and was released and taken to jail within a few hours. It was discovered that Deborah could not breathe voluntarily and she was immediately placed in a respirator and shortly thereafter in an iron lung. The contents of her stomach were removed. Just before she was placed in the iron lung she stopped breathing altogether and turned blue. Under artificial breathing she gradually recovered. Her condition was extremely critical. Her urine was examined and the result was "strongly positive for barbiturates," meaning that it contained a large amount of barbiturate.

If appellant was unconscious while in the receiving hospital or merely unresponsive, the condition changed on the way to the General Hospital. She was accompanied to the hospital by Police Officer Shirley Parker to whom she talked freely. She said that her child was dead and that she was sorry for what she had done and in a conversation at the hospital she stated that she and Cato had broken up; she had nothing to live for; she took seconal pills and gave 10 of them to Deborah. Later she stated that Cato had given Deborah the pills while she stood by, but recanted this story and said that she had given the pills to Deborah with some beer. Appellant made substantially the same statements to Officer Coffey. In appellant's apartment officers found several bottles containing different barbiturates including many seconal tablets. In the kitchen they found beer bottles. Deborah testified that on two occasions appellant had placed her hands over her (Deborah's) nose and mouth in a manner which prevented her breathing. The night before the fateful evening,

after Deborah had gone to bed, appellant gave her a pill resembling those which she gave her the following night, when she gave her four or five red or orange-colored pills; Deborah went to sleep and awakened in the General Hospital. Testifying in her defense, appellant admitted appealing to Eve Adams for help but said she could not remember what occurred after that until she arrived at the General Hospital. She admitted that the pills that were found in the house belonged to her but denied that she had taken any or given any to Deborah and denied having made any of the statements attributed to her by the officers. She offered no explanation of her condition or of Deborah's condition which induced her to call for help. A man named Barra testified that he was assisting appellant arrange things in her apartment into which she had but recently moved. He testified that Deborah came to him and offered him what looked like four or five pieces of candy which she held in her hand, but that after offering the same she ran out of the room. Under suggestion of the defense counsel, the witness identified the objects as "Good and Plenty Candy." He also testified that when he left at 10 o'clock p. m., Deborah was in her nightgown and had not been in bed. When recalled, Deborah contradicted the testimony of Barra in every respect. Upon this state of the record the court could not reasonably have failed to find that appellant administered the pills to her daughter.

 It is contended that Deborah was not shown to be a competent witness. She was six years old and attending school. In questioning by the court and in her direct and cross-examination by counsel, she gave intelligent and lucid answers. We have read her entire testimony. She had a clear recollection of the circumstances in which she was given the pills with swallows of beer. Her testimony was not shaken on cross-examination; during a long and searching cross-examination the consistency and directness of her answers were persuasive of her truthfulness and her competency as a witness. As we have seen, Deborah's account of what took place in her home was corroborated by the unimpeachable evidence that she had consumed a large quantity of seconal. Her competency was clearly established.

 Neither before Deborah testified nor at the end of her examination or cross-examination did defense counsel raise any question or interpose an objection to her competency.

704

No mistake was made in failing to challenge her competency. However, it is too late to challenge it at this time. (*People* v. *Lamb,* 121 Cal.App.2d 838, 847 [264 P.2d 126].)

 Upon the point that assault by means of force likely to produce great bodily injury is not an offense necessarily included within either of the offenses charged, appellant says: "There are no cases that hold that a person charged with attempted murder may be held on the offense of assault by means of force likely to produce great bodily harm. If your appellant was not guilty of attempted murder and she was not, she should have been released, for the offense for which she was found guilty is not an included offense." Appellant was not found guilty of an offense included within that of attempted murder; she was found guilty of an offense necessarily included in the offense of assault with intent to commit murder. Certainly, one cannot commit murder without using means likely to produce great bodily injury; neither can one who makes a violent assault with intent to commit murder be guiltless of an assault by means of force likely to produce great bodily injury. The employment of effective means, together with the specific intent charged would constitute assault with intent to commit murder. We cannot imagine a situation in which the offense of assault with intent to· commit murder could be established without proof of at least an attempt to use means which were likely to produce great bodily injury.

An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another. (Pen. Code, § 240.) To give a 6-year-old child a potentially fatal potion is an attempt coupled with a present ability to commit a violent injury upon the person of the child. If the assault is not committed with murderous intent, it is an assault of lesser degree. (See *People* v. *Fine,* 53 Cal. 263.) If it is by means of force likely to produce great bodily injury it is the offense of which appellant stands convicted. Here the force that was used did not consist of choking the child into swallowing the pills but the assault nevertheless was by means of a drug in a quantity that was likely to cause the child's death. It was somewhat similar to causing a violent explosion near a person sought to be injured which, without doubt, could constitute an assault by means of force likely to produce great bodily injury. The court could have found appellant guilty of assault with intent to commit murder had it deemed appellant's admissions of her

purpose to be sufficient proof of an intent to take her own life and the life of the child as well. The only element of the greater offense that was not clearly established was the intent to take Deborah's life.

The test of what constitutes a necessarily included offense is as simple as the words imply. If the greater offense cannot be committed without committing the acts constituting the lesser offense, the latter is an included offense. (*People* v. *Marshall*, 48 Cal.2d 394, 398 [309 P.2d 456].)

The judgment and the order are affirmed.

Vallée, J., and Ford, J., concurred.