[Crim. No. 16528. First Dist., Div. Two. May 31, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
PERCY JOHNSON, Defendant and Appellant.

## COUNSEL

Paul N. Halvonik, State Public Defender, under appointment by the Court of Appeal, Clifton R. Jeffers, Chief Assistant State Public Defender, Philip A. Schnayerson, Michael G. Millman, Janet M. Lande and Frank A. Lowe, Deputy State Public Defenders, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Thomas A. Brady and Jamie Jacobs-May, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

TAYLOR, P. J.—Defendant, Percy Johnson, appeals from a judgment entered on a jury verdict finding him guilty of attempted murder (Pen. Code, §§ 187, 664), assault with intent to commit murder (Pen. Code, § 217) and assault with force likely to produce great bodily injury (Pen. Code, § 245) while armed (Pen. Code, §§ 3024, subd. (a), repealed Stats. 1976, ch. 1139, § 279, operative July 1, 1977, now § 12022). On the attempted murder and assault with intent to commit murder, the jury also

found defendant had used a firearm in the commission of these offenses (Pen. Code, § 12022.5). Defendant was sentenced for the term prescribed by law on each count and the terms were ordered to run concurrently.

On this appeal, he contends that: 1) the court erred in not instructing, *sua sponte,* on attempted voluntary manslaughter and assault with intent to commit voluntary manslaughter; 2) his conviction for attempted murder cannot stand as it is necessarily included within the conviction for assault with intent to commit murder; 3) the court erred in ordering concurrent sentences for assault with intent to commit murder and assault with force likely to produce great bodily injury; and 4) the finding that he was armed with a deadly weapon during the assault with intent to commit murder must be stricken. For the reasons set forth below, we have concluded that the judgment must be modified, and as modified, affirmed.

Viewing the record in the light most favorable to the judgment (*People v. Reilly,* 3 Cal.3d 421, 425 [90 Cal.Rptr. 417, 475 P.2d 649]), as we must, the following pertinent facts appear: On September 2, 1976, defendant first telephoned and then arrived at the home of his wife, from whom he had been separated for about two weeks. Defendant was carrying a shotgun and some shells, kicked open the front door and dragged his wife by the hair toward his car, which was parked in front. He then threw her into the car and threatened to kill her if she left. When she tried to escape, defendant struck her on the head with the shotgun so hard that the gun was broken. The victim attempted to escape but then fell to the ground and defendant struck her about the head with a hatchet that he had placed in the car that morning. The attack lasted approximately two to three minutes. The victim sustained a fractured skull, brain damage, complete paralysis of the facial nerves on the left side and a possible loss of vision in the left eye.

Defendant left the scene of the beating and returned to the home of the friends with whom he had lived since the separation. He told them of the attack in detail with a demonstration. He was pleased, smiled and indicated that he thought he had done a "pretty good job." He then asked for a towel, cleaned the bloodstains from his car and threw away the hatchet. He was arrested later that day.

According to defendant's friends, the attack was the culmination of a bad state of affairs between defendant and his wife. He had two fights with her over the telephone and vaguely mentioned some problems with

the relationship, but no particular incident which precipitated his outbreak.

About a week before the crime, defendant met his wife by prearrangement to repay some money he owed her. After they met, he pulled out a razor, held it to her head and forced her to drive around with him while he told her in no uncertain terms that he intended to kill her. The day before the attack, he saw his wife with her former husband who broke up a struggle. Defendant again threatened to kill her; as he did so, the knife in his pocket was visible. That day, he also told his employer that his mother was dying of cancer in southern California and left work, ostensibly for the purpose of seeing her. He made up this story to get time off "to go do what he was going to do" with his wife. The night before the attack, he had a conversation with his friends, indicating that he wanted to kill his wife and wanted to get revenge against her for her infidelity, her threats to go to his probation officer, and her theft of his jewelry. He was coherent and rational throughout this conversation and by the end of it appeared calm and convinced that he should not do anything except stay away from his wife.

■ Defendant first urges that the trial court erred to his prejudice by failing, *sua sponte*, to instruct the jury on voluntary manslaughter and assault with intent to commit manslaughter (*People* v. *Carmen,* 36 Cal.2d 768, 773 [228 P.2d 281]). Defendant argues that there was evidence to support a finding that he acted in the heat of passion upon great provocation and lacked the malice necessary for attempted murder or assault with intent to commit murder. He asserts that the court failed in its duty to instruct on every material question on which there is any evidence deserving of any consideration whatsoever, and that the instruction on the lesser included attempted manslaughter offenses was mandatory (*People* v. *Ray,* 14 Cal.3d 20, 31 [120 Cal.Rptr. 377, 533 P.2d 1017]; see also *People* v. *Hood,* 1 Cal.3d 444 [82 Cal.Rptr. 618, 462 P.2d 370]).

■ In applying the test of *People* v. *Carmen, supra,* 36 Cal.2d 768, our Supreme Court said in *People* v. *Sedeno,* 10 Cal.3d 703, 719 [112 Cal.Rptr. 1, 518 P.2d 913]: "Before a court must instruct *sua sponte* on voluntary manslaughter in the heat of passion as a lesser offense included within murder there must be either some evidence that heat of passion was present at the time of the killing or some reason for the court to know that the defendant is relying on that theory of manslaughter as a defense."

We first dispose of the latter half of the *Sedeno* test (*supra,* 10 Cal.3d 703). The record indicates that there was no reason for the trial court to believe that the defendant relied on any theory of attempted manslaughter. Rather, the defense counsel attempted to convince the jury that defendant did not intend to kill his wife. The defense presented no testimony and thus none of the mitigating circumstances which indicate a reduction to attempted manslaughter.

The record is totally devoid of any evidence of heat of passion at the time of the attack or that defendant's reason was obscured by passion (*People* v. *Morse,* 70 Cal.2d 711 [76 Cal.Rptr. 391, 452 P.2d 607]). Defendant points to the prolonged animosity and claims that his act was provoked by his wife's actions, and that he was acting in a rage at the time of the assault. However, the uncontroverted evidence clearly shows not a spur of the moment attack spawned by passion, but a planned and deliberate scheme. Defendant had threatened his victim on a number of prior occasions, including the day before the crime; he also lied to his employer to get time off to commit the crime. The night before the offense, defendant calmly discussed avenues of revenge. He telephoned his wife a few minutes before his arrival and came with a shotgun and hatchet. He tried to force her into his car so that he could assault her in a place of his choosing, but she escaped temporarily. After the attack, he returned to the home of his friends, described and demonstrated the attack in detail, and was smiling and pleased that he had "done a pretty good job." Thus, there was no evidentiary basis for manslaughter oriented instructions.

*People* v. *Berry,* 18 Cal.3d 509 [134 Cal.Rptr. 415 556 P.2d 777], on which defendant relies, is entirely distinguishable. Admittedly in *Berry,* as in the instant case, there was evidence of a bitter relationship between the defendant and his wife. However, there was no evidence of a deliberate or premeditated plan of attack, as there was here. Berry killed his wife with the telephone cord in an attempt to keep her from screaming. Furthermore, our Supreme Court pointed to the testimony of both the defendant and a defense psychiatrist indicating that Berry was in the heat of passion under an uncontrollable rage (pp. 514-515).

In light of the record, we can only conclude that the trial court did not err in failing to instruct, *sua sponte,* on the elements of attempted manslaughter and assault with intent to commit voluntary manslaughter. (*People* v. *Noah,* 5 Cal.3d 469, 479 [96 Cal.Rptr. 441, 487 P.2d 1009]; *People* v. *Roberts,* 51 Cal.App.3d 125 [123 Cal.Rptr. 893].)

Defendant next contends that his conviction for attempted murder (Pen. Code, § 187) cannot stand because attempted murder is necessarily included within the offense of assault with intent to commit murder (Pen. Code, § 217). Where one offense is necessarily included in another, both double conviction (*People* v. *Greer,* 30 Cal.2d 589, 597-598 [184 P.2d 512]) and double punishment are prohibited (*People* v. *Knowles,* 35 Cal.2d 175 [217 P.2d 1]; *People* v. *Wilson,* 50 Cal.App.3d 811 [123 Cal.Rptr. 663]). An assault with intent to commit a crime necessarily embraces an attempt to commit said crime (*People* v. *Rupp,* 41 Cal.2d 371, 382 [260 P.2d 1]).

The People, relying on *People* v. *Meriweather,* 263 Cal.App.2d 559 [69 Cal.Rptr. 880], argue that defendant can properly be convicted of both offenses. The holding and reasoning of the Second District in *Meriweather,* at page 563, was as follows: "Where, as here, an attack is made upon the person of another with a deadly weapon in such manner, coupled with the threat to kill, that it leaves no reasonable doubt that the perpetrator intended to murder his victim, the perpetrator has committed the crime of assault with intent to commit murder and has also committed the crime of attempt to murder. The crime of attempt to murder, however, does not require a violent attack with a deadly weapon upon the person of the victim, as it may be accomplished by other methods, and while simple assaults and felonious assaults are, analytically, attempts, the Legislature by statute has made them distinct offenses with specified punishments. (See 2 Witkin, Cal. Crimes (1963) § 1047(c), p. 992.) Here, the Legislature, by the enactment of section 217 of the Penal Code has made the crime of assault with intent to commit murder an offense distinct from that of attempted murder and has provided a specific punishment upon conviction thereof. Had the Legislature intended that the punishment for the crime of attempted murder should be the same as the punishment for the crime of assault with intent to commit murder it would have been a very simple matter for it to have so provided. It has not done so.

"It was proper, under the facts of the case and under the pleadings, for the trial court to have found the defendant guilty of both the crimes of attempted murder and assault with intent to commit murder."

In *Meriweather,* however, the court did not mention the prohibition of double conviction (*People* v. *Greer, supra,* 30 Cal.2d, pp. 597-598), and was not faced with a problem of double punishment. The People also rely on *People* v. *Ramirez,* 2 Cal.App.3d 345 [82 Cal.Rptr. 665], and *People* v.

*Provencher,* 33 Cal.App.3d 546, 549 [108 Cal.Rptr. 792]. Neither is helpful here, as both speak to the question of whether two crimes are identical and do not deal with the question of necessarily included offenses. ■ We think that the codification of separate offenses for one act does not sanction double conviction.[1]

The court in *Greer, supra,* analyzed the question of two offenses being defined in separate code provisions and concluded that this did not preclude a finding that one offense was necessarily included in the other. "Respondent contends, however, that all three of the offenses involved herein contain different elements. It is true that each offense is stated differently in the codes and that defendant could have contributed to the delinquency of a minor without committing statutory rape or a lewd and lascivious act. [Citation.] Nevertheless, the converse is not true. We are holding, not that these offenses are identical, but that every violation of sections 261(1) and 288 necessarily constitutes a violation of section 702 and that therefore the offense defined in section 702 is an offense necessarily included in the offenses defined in sections 261(1) and 288." (30 Cal.2d 598.) The proper test for finding included offenses is "where one offense cannot be committed without committing another offense, the latter offense is a necessarily included offense." (*People v. Cannady,* 8 Cal.3d 379, 390 [105 Cal.Rptr. 129, 503 P.2d 585]; see also *People v. Wilson,* 62 Cal.App.3d 370, 373 [132 Cal.Rptr. 813]; *People v. Ramos,* 25 Cal.App.3d 529, 538 [101 Cal.Rptr. 230]).

■ The elements of attempted murder are the intent to murder a human being and a direct but ineffectual act in furtherance of such intent which act goes beyond mere preparation (*People v. Adami,* 36 Cal.App.3d 452, 455 [111 Cal.Rptr. 544]). Attempted murder, however, does not necessarily include assault with intent to commit murder, as it may be accomplished by means other than assault (*People v. Meriweather, supra,* 263 Cal.App.2d 559, 563; 1 Witkin, Cal. Crimes, §§ 255, 259, 260, pp. 241-246). The elements of assault with intent to commit murder are

---

[1]We do not find persuasive the reasoning of *People v. Smith,* 80 Cal.App.3d 111 [145 Cal.Rptr. 443], decided by the Fourth District on April 20, 1978, and cited by the People at oral argument. In *Smith,* the court affirmed convictions for attempted murder and assault with a deadly weapon to commit murder, but based its decision on *People v. Schueren,* 10 Cal.3d 553 [111 Cal.Rptr. 129, 516 P.2d 833], which dealt with the question of the sentences for assault with intent to commit murder (Pen. Code, § 217), and assault with a deadly weapon (Pen. Code, § 245). Although *Schueren* held it was proper to *charge* a defendant with both an offense and an included offense, the court did not address the question of whether a defendant could be convicted of both. Such a determination would have required the court to overturn its holding in *People v. Greer, supra,* 30 Cal.2d 589.

the specific intent to murder the victim and the present ability to do so by means of assault.[2] While assault with intent to commit murder is a form of attempted murder (*People v. Heffington*, 32 Cal.App.3d 1 [107 Cal.Rptr. 859]), it is not a necessarily included offense of attempted murder, as the elements of the two offenses are distinct. However, we cannot envision an assault with intent to commit murder that is not also an attempted murder. Therefore, we conclude that assault with intent to commit murder (count II) necessarily includes attempted murder (count I). It follows that defendant cannot be convicted of both. Accordingly, the conviction for attempted murder must be reversed.

The record, however, indicates that defendant was also convicted in count III of assault with force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)). Here, both the People and defendant initially overlooked the fact that assault with force likely to produce great bodily injury is an offense necessarily included in assault with intent to commit murder (*People v. Avila*, 178 Cal.App.2d 700 [3 Cal.Rptr. 297]). As stated in *Avila*, at page 704: "Certainly, one cannot commit murder without using means likely to produce great bodily injury; neither can one who makes a violent assault with intent to commit murder be guiltless of an assault by means of force likely to produce great bodily injury. The employment of effective means, together with the specific intent charged would constitute assault with intent to commit murder. We cannot imagine a situation in which the offense of assault with intent to commit murder could be established without proof of at least an attempt to use means which were likely to produce great bodily injury."

In response to a question at oral argument, defendant's counsel urged that because of the alternative language of Penal Code section 245, subdivision (a) (e.g., "assault . . . with a deadly weapon *or* . . . means . . . likely to produce great bodily injury") defendant's conviction here for count III pursuant to Penal Code section 245, subdivision (a) was not a necessarily included offense within the count II assault, assault with intent to commit murder. (Pen. Code, § 217.)

---

[2]While a specific intent to murder is required, no degrees of murder are involved. Thus, premeditation is not required and the question of the intent with which the act was done is one of fact (*People v. Sartain*, 268 Cal.App.2d 486 [73 Cal.Rptr. 799]). The nature of the assault, the weapon and manner in which it was used, and the actual consequences of the assault, including the nature, seriousness and location of wound provide the evidence of the intent necessary for the offense (*People v. Becerra*, 223 Cal.App.2d 448 [35 Cal.Rptr. 808]).

However, the record indicates that defendant was charged with assault with force likely to produce great bodily injury, the alternative offense defined by Penal Code section 245, subdivision (a). ■ The term included offense "must refer to offenses included in the language of the pleading, not to offenses necessarily included in the language of the statutes." (*People* v. *Marshall,* 48 Cal.2d 394, 404 [309 P.2d 456].) ■ Thus, while all violations of section 245 may not be necessarily included offenses within section 217, the offense with which defendant here was charged in count III was an included offense of the assault with intent to commit murder as charged in count II (*People* v. *Avila, supra,* 178 Cal.App.2d, p. 704). Accordingly, the conviction for assault with force likely to produce great bodily injury (count III) must be reversed.

The issue of double punishment is rendered moot by the reversal of the convictions for counts I and III. As to the remaining conviction for assault with intent to commit murder, defendant is entitled to the benefit of the new Determinate Sentencing Act. Pursuant to the Indeterminate Sentencing Act, the sentence for assault with intent to commit murder was punishable by a prison sentence of not less than one nor more than 14 years (Pen. Code, § 217); pursuant to the Determinate Sentencing Act, assault with intent to commit murder is punishable by a prison sentence of two, three or four years (Pen. Code, § 217, as amended by Stats. 1976, ch. 1139, § 140, operative July 1, 1977). Accordingly, defendant should be sentenced under the Determinate Sentencing Act.

■ Finally, we turn to the enhanced penalties of Penal Code sections 12022 and 12022.5. As indicated above, the jury found defendant was armed and used a firearm (Pen. Code, §§ 12022, 12022.5), in the commission of the assault with intent to commit murder. Defendant and the People both point out that since a "use" finding necessarily includes an armed finding, a defendant may not suffer the enhanced penalties of both Penal Code sections 12022 and 12022.5 (*People* v. *Bennett,* 60 Cal.App.3d 112, 119-122 [131 Cal.Rptr. 305]). The armed finding (Pen. Code, § 12022) must be stricken.

The judgment is modified as follows: Count I, attempted murder, is reversed; count III,[3] assault with intent to commit great bodily injury,

---

[3]Although the jury found defendant guilty of assault with force likely to produce great bodily injury, as charged in count III, the judgment as to count III erroneously refers to

corrected to conform to the verdict and reversed; count II, assault with intent to commit murder, the armed allegation, is stricken and as so modified affirmed.

Kane, J., and Rouse, J., concurred.

---

assault with a deadly weapon. The record indicates that a motion to amend count III was initially granted but then vacated.