[Crim. No. 18154. First Dist., Div. Two. Apr. 4, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
GEORGE C. GRAY, Defendant and Appellant.

**COUNSEL**

Donald M. Solomon, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Herbert F. Wilkinson and Alvin J. Knudson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**TAYLOR, P. J.**—Defendant, George C. Gray, appeals from a judgment of conviction entered on a jury verdict finding him guilty of attempted murder (Pen. Code, §§ 187, 664), with use of a firearm (Pen. Code, § 12022.5) and great bodily injury (Pen. Code, § 12022.7) with a prior conviction (Pen. Code, § 1203.06, subd. (a)); assault with a deadly

weapon (Pen. Code, § 245, subd. (a)), coupled with use of a firearm (Pen. Code, § 12022.5); and carrying a weapon capable of being concealed, with a prior felony conviction (Pen. Code, § 12021). He contends that: 1) he should not have been convicted of the great bodily injury count as Penal Code section 12022.7 does not apply to attempts; 2) he was denied due process by the People's repeated *Griffin* error; 3) the admission of his confessions made in the absence of counsel and after violation of *Miranda* rights constituted prejudicial error; 4) the imposition of sentence pursuant to Penal Code section 664 was cruel and unusual punishment as it exceeded the punishment prescribed for the more specific offense of attempted murder; and 5) attempted murder, which is punishable pursuant to Penal Code section 217, should not be prosecuted under the general attempt statute (Pen. Code, § 664). For the reasons set forth below, we have concluded that the judgment must be affirmed, except for the sentence, and the trial court directed to resentence defendant pursuant to Penal Code section 217.

As there are no contentions concerning the sufficiency of the evidence, a brief summary of the pertinent facts will suffice.

The record, which includes the victim's testimony and defendant's confessions, indicates that toward evening on July 29, 1977, defendant arrived at the Oakland apartment shared by the victim, Ms. Johnson, and Wayne Gatlin. Present were defendant's friend, Vickie, and several others.[1] Defendant removed his blue suede jacket and began to play with the .38 pistol he took from his pants. About 45 minutes later, defendant, Vickie and the victim drove to San Francisco in a yellow and black Marauder Mercury owned by Gatlin. Vickie, who had been driving, got out at Silver Avenue and San Bruno; the victim got behind the wheel and drove two blocks to a liquor store to buy cigarettes. When she returned to the car, a strange black woman in her mid-20's was in the driver's seat; defendant explained that this person was a friend who knew where they were going. After they had driven about 10 blocks toward Sunnydale, the driver said something was wrong with one of the tires, stopped the car and got out. When the victim also got out of the car to examine the tires, defendant took out his gun, pointed it at her face and twice pulled the trigger; the gun clicked but did not fire. The victim got back into the car and defendant told her he was going to kill her. When she asked why, he told her to get out of the car and indicated that if she did so, she might have a chance to live. As she got out of the car, she began to run and was shot in the back of the head; as she fell, she hit the side of the car.

---

[1]Vickie, like the victim, worked as a prostitute.

Defendant and the driver then apparently left. When the police arrived shortly thereafter, they saw two white males standing over the victim, who lay on the ground spitting blood. She was conscious and told them what happened. She was taken to the hospital and remained until September while she recovered from the extensive injuries she sustained, which included a shattered jaw and paralysis of her right side. The victim indicated to the police that she had been shot by a man named George whose last name she did not know.

In September 1977, Sergeant Rose of the Alameda County Sheriff's Department gave a demonstration and lecture on institutional violence and prison gangs for a police narcotics class in Hayward. As a guest speaker, Rose invited defendant who was then incarcerated at Santa Rita.[2]

On the day scheduled for the class, another deputy, Schueler, contacted Rose and told him that defendant had some information concerning a violent crime which had occurred in San Francisco. Rose indicated he would speak to defendant about the matter. After the class, he interviewed defendant at the Hayward Police Department. On September 12, defendant confessed the crime; he was interviewed again on October 14, 1977, by Inspector Cashen of the San Francisco Police Department,[3] and confessed. After the September 12 interview, Cashen obtained a photograph of defendant and several other black males. The victim positively identified defendant as her assailant.

Defendant presented no witnesses and did not testify.

Defendant first contends that he was improperly charged with attempted murder (Pen. Code, § 664) and great bodily injury (Pen. Code,

---

[2]Although the record does not reveal the precise reason for defendant's incarceration, he had been in custody for at least a month on several felony charges in Alameda County; the record does not indicate that defendant had counsel at that time. His Penal Code section 995 motion stated that he was represented by the public defender.

[3]The tapes and transcripts of the later of these interviews were played to the jury and transcriptions made available. Pursuant to California Rules of Court, rule 12(a), we have augmented the record on appeal to include each of these items, as well as the recording of a subsequent telephone conversation between defendant and Cashen pursuant to the People's belated motion in their brief. The conversation with Schueler was apparently recorded but not adduced and no proof offered as to whether there was any interrogation by Schueler and if so, whether it was preceded by *Miranda* warnings. Schueler did not testify. The confessions to Rose and Cashen were preceded by *Miranda* warnings.

§ 12022.7).[4] We recently rejected an identical contention in *People* v. *Superior Court (Grilli)* 84 Cal.App.3d 506, footnote 5, at page 513 [148 Cal.Rptr. 740], as follows: ■ "Defendant concedes that if the charge of attempted murder stands, it would support an allegation of great bodily injury. Because attempted murder is a separate and distinct crime, it does not fall within the four exceptions provided in the statute (murder, manslaughter, assault with a deadly weapon and assault by means of force likely to produce great bodily injury under § 245). The legislative inclusion of the four crimes as exceptions necessarily excludes any other exceptions (*People* ex rel. *Cranston* v. *Bonelli* (1971) 15 Cal.App.3d 129, 135 [92 Cal.Rptr. 828])."

■ Next, defendant contends that the court erroneously permitted the prosecution to commit prejudicial misconduct by repeatedly referring[5] to his failure to testify in violation of the rule of *Griffin* v. *California,* 380 U.S. 609 [14 L.Ed.2d 730, 85 S.Ct. 1229], as set forth below.

---

[4]"Any person who, with the intent to inflict such injury, personally inflicts great bodily injury on any person other than an accomplice in the commission or attempted commission of a felony shall, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he has been convicted, be punished by an additional term of three years, unless infliction of great bodily injury is an element of the offense of which he is convicted.

"As used in this section, great bodily injury means a significant or substantial physical injury.

"This section shall not apply to murder, manslaughter, assault with a deadly weapon or assault by means of force likely to produce great bodily injury under Section 245. The additional term provided in this section shall not be imposed unless the fact of great bodily injury is charged in the accusatory pleading and admitted or found to be true by the trier of fact."

[5]Defendant complains about the following portions of the argument:

"[By Mr. Clapp:] The next important testimony in this case were the two confessions that were introduced through the testimony of Sergeant Rose of the Alameda Sheriff's Department and Inspector Cashen of the San Francisco Police Department. . . .

"You will recall that in that tape George Gray was advised of his rights and that he was a participant in that interview and gave very long answers.

"There didn't appear to be any halting or hesitancy on his part in answering the questions.

"You are to determine whether or not that statement was truthful. *There is nothing to indicate that it wasn't.* And the things that he said to Sergeant Rose are very important." (Italics added.)

"[By Mr. Clapp:] *This testimony that was introduced through Inspectors Rose and Cashen is unimpeached.* The next—

"MR. BUSHNELL: Well, your Honor, I will object to that last statement.

"THE COURT: It's argument. The jury heard the evidence. You may proceed, counsel." (Italics added.)

"[By Mr. Clapp:] I think *it's uncontested, it will be uncontested that Pamela Johnson suffered great bodily injury at the hands of George Gray* in this case." (Italics added.)

Defendant's contention is based on the fact that his entire case was based on attacking the credibility of the major prosecution witness, the victim. The record indicates that she testified under a grant of immunity, admitted a prior felony conviction for assault with a deadly weapon and did not identify defendant until after one of his confessions had been obtained. The record also indicates that the jury deliberated for four hours and then returned to clarify the sequence of events surrounding Cashen's several interviews with the victim. Defendant asserts that the jury's questions indicated that they were in doubt about the reliability of her photo lineup identification and his presence at the scene of the crime.

Defendant, however, overlooks the fact that among the victim's major difficulties in her initial communications with the police was the broken jaw she had sustained as the result of the gunshot wound in her head. As a result, her memory was also impaired. The uncontroverted evidence indicates that the injuries to her jaw prevented her from clearly communicating to the officers. In any event, as we have already indicated above, there is overwhelming evidence that the victim sustained great bodily injury as the result of defendant's actions.[6]

While *Griffin* does not permit an adverse inference to be drawn from a defendant's resort to his constitutional right not to testify, *Griffin* did not foreclose the prosecution from emphasizing the absence of other evidence to controvert the proof in the People's case (*People* v. *Chandler,* 17 Cal.App.3d 798, 805-806 [95 Cal.Rptr. 146]). That is precisely what occurred here. The prosecution's comments were proper in view of defendant's failure to call any of the witnesses who were present on July 29, 1977, when he was in Oakland with the victim, or the single other witness to the shooting.[7]

The instant record further indicates that the prosecution pointed out that defendant did not have to testify and the jury would be so instructed. The jury was instructed that "You must not draw any inference of guilt from the fact that the Defendant did not testify, nor should this fact be discussed by you or enter into your deliberations in any way." The jury was also instructed that statements of counsel are not evidence.

---

[6]The victim admitted that she did not initially tell Cashen about the strange woman driver because she had had a misunderstanding with Vickie and wanted her convicted. The weight of this evidence was for the jury, as was the conflict in the victim's testimony as to whether or not Vickie was the driver.

[7]The record permits the inference that Vickie was the person present at the shooting but did not testify as she asserted her privilege against self-incrimination.

We can only conclude that there was no *Griffin* error in any of the comments set forth in footnote 5, page 551 above. It is now well established that although *Griffin* prohibits reference to a defendant's failure to take the stand in his own defense, that rule " 'does not extend to comments on the state of the evidence or on the failure of the defense to introduce material evidence or to call logical witnesses. [Citations.]' " *(People* v. *Vargas,* 9 Cal.3d 470, 475 [108 Cal.Rptr. 15, 509 P.2d 959]).[8]

In the light of the entire record, even assuming, without conceding, that there was a *Griffin* error, we can only conclude that it is beyond a reasonable doubt that the supposed *Griffin* error could have had no significant impact upon the verdict obtained *(Chapman* v. *California,* 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065]).[9]

As to his confessions, defendant concedes that nothing incriminating was said to the police class. ■ His argument focuses on his prior statement to Schueler that was not adduced[10] and which provided the basis for Rose's questions after class. The People argue that there was no prejudice as the statement to Schueler was not presented to the jury. As defendant correctly argues, the issue is not whether the jury heard defendant's statement to Schueler, but whether it was coerced. Relying on *People* v. *Jimenez,* 21 Cal.3d 595 [147 Cal.Rptr. 172, 580 P.2d 672], decided after the trial of the instant case, defendant asserts that since there was no *independent proof* of the voluntariness of his statement to Schueler, the People have not sustained their burden of proof that his subsequent confessions to Rose and Cashen were not influenced by his initial statement to Schueler. He also argues that, in any event, his

---

[8]In *Vargas,* at page 474, the prosecutor commented that "there is no evidence whatsoever to contradict the fact that [the witness] saw [the two defendants] over [the victim]. *And there is no denial at all that they were there.*" Our Supreme Court found a *Griffin* error and noted that the word "denial" connotes a personal response by the accused himself. The prosecution's comments in the instant case do not come close to the mild and indirect comment in *Vargas.*

[9]We are aware that since the filing of the briefs in the instant matter, our Supreme Court adopted a more stringent test for prosecutorial misconduct by eliminating the prior requirement of bad faith *(People* v. *Bolton* (1979) 23 Cal.3d 208 [152 Cal.Rptr. 141, 589 P.2d 396]). Even assuming that the prosecution's comments constituted misconduct under the new test of *Bolton,* we conclude that on the basis of the entire record, any reasonable jury would have reached the same result.

[10]The record indicates that defendant talked to Schueler; Schueler then passed his information on to Rose. At the Evidence Code section 402, subdivision (b) hearing to establish the preliminary admissibility of the confessions to Rose and Cashen, defendant asserted that the burden was on the People to prove the voluntariness of the statements, and argued that there had been a tape of defendant's conversation with Schueler, which the defense had not been able to discover. At the trial, defendant did not object to Rose's testimony about defendant's conversation with Schueler.

statements to Rose and Cashen were obtained in violation of his right to counsel.

The record indicates only that defendant mentioned the San Francisco shooting incident to Schueler. There is no indication in the record of the precise nature of defendant's statement to Schueler and the circumstances under which it was made. However, Rose's testimony at the Evidence Code section 402, subdivision (b) hearing was that all Schueler indicated was that defendant "had some information regarding an incident in San Francisco." Defendant was not charged until after his confessions to Rose and Cashen. Thus, it can be reasonably inferred that defendant did not make a confession to Schueler about the instant offense.[11] As there is no indication that defendant's statement to Schueler was the result of any interrogation, defendant's fruit of the poisonous tree argument is misplaced. The prosecution's burden of proving the voluntariness of a confession does not arise unless the defense has established that there was an incriminating statement or a confession made as the result of a custodial interrogation. Here, the record does not indicate that there was even an interrogation by Schueler.[12]

*People* v. *Jimenez, supra,* 21 Cal.3d 595, was decided *after* the instant proceedings and at page 608 expressly made retroactive to all cases then pending on appeal, like the instant one. In *Jimenez,* at pages 602-603, our Supreme Court reiterated the rules applicable to confessions and then, at pages 603-607, changed the burden of proof by indicating that henceforth, *the People would have the preliminary burden of proving the voluntariness of a confession* beyond a reasonable doubt, and that the effect of any error was to be measured by the *Watson* standard.

Defendant's argument that *Jimenez, supra,* now automatically makes suspect *any statement made by a defendant* while in custody, finds no support in the language of *Jimenez.* We note our Supreme Court's explicit references in *Jimenez* to what occurs during the interrogation, the repeated references to involuntary confessions, and the privilege against self-incrimination. The instant record, unlike *Jimenez* and its progeny, does not even contain conflicting evidence as to whether or not defendant's statement to Schueler was a voluntary one. (Cf. *People* v. *Walker,* 83 Cal.App.3d 619, 621 [148 Cal.Rptr. 66].) All we can glean

---

[11]Even assuming that defendant made an incriminating statement to Schueler, we may reasonably infer that his counsel made a good tactical judgment in not pursuing the matter below if the investigation revealed a Mirandized voluntary statement.

[12]We note that defendant did not call Schueler.

from the sparse record is that defendant told Schueler that he had some information about the instant crime, and that when Schueler relayed this fact to Rose, Rose decided to further question defendant. Defendant here made no offer of proof or other showing of any custodial interrogation by Schueler. The most reasonable inference from the record is that defendant volunteered the fact that he had some information about the instant offense. Accordingly, *Jimenez* is not in point.

As indicated above, defendant's subsequent confessions to Rose and Cashen were made after defendant had been advised of his *Miranda* rights. On this appeal, defendant makes no claim that these confessions were not voluntary, but relies solely on the fruit of the poisonous tree and the denial of counsel. ██ As to the latter, he asserts that since a reading of the *Miranda* rights is not enough to satisfy the requirements of due process, his two subsequent confessions were not admissible as they were not the product of a rational intellect and free will. He argues that the absence of his counsel during the taping of his two subsequent confessions constituted a deprivation of his state and federal constitutional rights to counsel.

As to this issue, defendant urges that since he was in custody on felony charges, apparently arising out of another incident in Alameda County,[13] his counsel could have advised him of the possibility that his statements would be used against him. Defendant concedes the existence of contrary authority (e.g., *People* v. *McCowan*, 85 Cal.App.3d 675 [149 Cal.Rptr. 611]; *People* v. *Booker*, 69 Cal.App.3d 654 [138 Cal.Rptr. 347]).

The People cite *People* v. *Duck Wong*, 18 Cal.3d 178 [133 Cal.Rptr. 511, 555 P.2d 297], in which an identical contention was rejected as follows: "Neither *Isby* nor any subsequent case, however, has suggested that the per se rule should extend to the interrogation conducted before charges are filed. Both *Massiah, supra,* and *Isby* were post-indictment cases which stressed the importance of counsel's representation during this critical stage in the proceedings. (See 377 U.S. at p. 205 [12 L.Ed.2d at p. 250].) Thus we have held that '[T]he principles expressed in *Massiah*

---

[13]Both Rose and Cashen knew defendant was being held on felony charges in Alameda County but did not know the precise nature of these charges. The record does not clearly indicate whether or not defendant had counsel on the Alameda County charges at the time of the confessions and if so, whether or not Rose and Cashen were aware of the fact. At the Evidence Code section 402, subdivision (b) hearing, the following ensued during the questioning of Cashen: "Q. And did you call Mr. Gray's attorney or in any way contact Mr. Gray's attorney prior to conducting the interview on October the 14th? A. No, I didn't." Thereafter, defendant's attorney indicated that he had no more questions.

do not apply in a pre-indictment setting. [Citations.]' *(People* v. *Murphy* (1972) 8 Cal.3d 349, 362 [105 Cal.Rptr. 138, 503 P.2d 594]; accord, *Hoffa* v. *United States* (1966) 385 U.S. 293, 309-310 [17 L.Ed.2d 374, 386-387, 87 S.Ct. 408]; *People* v. *Leach* (1975) 15 Cal.3d 419, 443 [124 Cal.Rptr. 752, 541 P.2d 296]; *People* v. *Mabry* (1969) 71 Cal.2d 430, 441 [78 Cal.Rptr. 655, 455 P.2d 759]; *People* v. *Brice, supra,* 239 Cal.App.2d 181, 191; *United States* v. *Masullo* (2d Cir. 1973) 489 F.2d 217, 222; *United States* v. *Durham* (7th Cir. 1973) 475 F.2d 208, 210-211; see *Kirby* v. *Illinois* (1972) 406 U.S. 682, 688 [32 L.Ed.2d 411, 417, 92 S.Ct. 1877] [the Sixth Amendment right to counsel 'attaches only at or after the time that adversary judicial proceedings have been initiated'].)

"Finally, there are compelling policy considerations against an extension of *Isby* to all custodial interrogations. Following the commission of a possible crime, it is essential that the police not be unduly hampered in their investigation. Under defendant's proposed extension of *Isby,* however, interrogation of suspects could be delayed indefinitely while the officers attempted to locate the suspect's counsel, notify him of the proposed interview, and either obtain his consent thereto or permit his participation therein. We find no convincing reasons why such a cumbersome procedure is necessary to protect a suspect's constitutional rights." (Pp. 186-187.)

We also note that the record here indicates that while both of the officers who questioned defendant knew of the other felony charges, neither had any knowledge of the specific details of the Alameda County offenses and the record does not indicate whether or not, in fact, defendant had counsel at the time of the interrogations and if so, whether or not either Rose or Cashen was aware of the fact. Thus, following the above quoted reasoning of *Duck Wong,* we can only conclude that the trial court here properly concluded that as to the two subsequent confessions, defendant was correctly advised of his *Miranda* rights and voluntarily waived them (cf. *People* v. *McCowan, supra,* 85 Cal.App.3d, at p. 681; *People* v. *Booker, supra,* 69 Cal.App.3d at p. 669).

■ Finally, defendant asserts that the additional three-year sentence imposed pursuant to Penal Code section 664, the general criminal attempt statute,[14] was arbitrary and capricious and also constituted cruel

---

[11]The record indicates that although the information charged offenses tantamount to assault with intent to murder, defendant was charged pursuant to Penal Code section 664, which, when read together with the charge of homicide (Pen. Code, § 190), carries a

and unusual punishment, as well as a deprivation of his right to liberty, equal protection and due process guaranteed by the federal and state Constitutions (Cal. Const., art. I, §§ 1, 7, 15, 17; U.S. Const., Amends. 5, 6, 8, 14). He argues that he should have been sentenced pursuant to the more specific offense proscribed by Penal Code section 217,[15] e.g., assault with intent to commit murder.

Defendant also argues in the alternative that the court erred by refusing his proffered instruction, CALJIC 9.01, based on Penal Code section 217, a lesser included offense.

As to the latter contention, we recently held in *People* v. *Johnson*, 81 Cal.App.3d 380, 389 [146 Cal.Rptr. 476],[16] that assault with intent to commit murder (Pen. Code, § 217) was not a necessarily included offense of attempted murder (Pen. Code, §§ 187, 664). Our Supreme Court subsequently denied a hearing in *Johnson*.

Defendant, however, argues that *Johnson, supra*, does not reach his argument here, which is based on the following language from *In re Lynch*, 8 Cal.3d 410, 426 [105 Cal.Rptr. 217, 503 P.2d 921]: "[I]f among [the penal statutes] are found more serious crimes punished less severely than the offense in question, the challenged penalty is to that extent suspect."

In *Lynch, supra*, our Supreme Court invalidated the penalty for second offense indecent exposure by comparing it with other California penalties for more serious offenses, such as manslaughter, assault with intent to

---

sentence of five, six or seven years. Defendant admits the existence of authority holding that the firearm use and bodily injury allegations are not part of the accusation (*People* v. *Wilson*, 62 Cal.App.3d 370 [132 Cal.Rptr. 813]; *People* v. *Benjamin*, 52 Cal.App.3d 63 [124 Cal.Rptr. 799]; *People* v. *Orr*, 43 Cal.App.3d 666 [117 Cal.Rptr. 738]). Penal Code sections 954, 969c, 969d, and 12022.7 (which govern the lodging of enhancement charges) indicate that the firearm use and bodily injury allegations become part of the allegations of the information which was not discussed in either *Wilson* or *Orr*, supra. However, we do not need to resolve this issue here for the reasons discussed below.

[15]Penal Code section 217 pertaining to assault with intent to commit murder prescribes a basic sentence of two, three or four years.

[16]In *Johnson*, we reasoned as follows at page 389: "While assault with intent to commit murder is a form of attempted murder (*People* v. *Heffington*, 32 Cal.App.3d 1 [107 Cal.Rptr. 859]), it is not a necessarily included offense of attempted murder, as the elements of the two offenses are distinct. However, we cannot envision an assault with intent to commit murder that is not also an attempted murder" and concluded that assault with intent to commit murder necessarily includes attempted murder. We then held that the defendant *Johnson* could not be convicted of both assault with intent to commit murder (Pen. Code, § 217) and attempted murder (Pen. Code, §§ 187, 664) and reversed the conviction as to the attempted murder count.

rape, or child beating (*In re Foss,* 10 Cal.3d 910, 926 [112 Cal.Rptr. 649, 519 P.2d 1073]). Defendant argues that the proper basis for comparison here is Penal Code section 217, which *specifically* proscribes assault with intent to commit murder, the very conduct with which he was charged. Citing *People* v. *Johnson, supra,* he argues that since assault with intent to commit murder, which is "also an attempted murder," is punishable by two, three or four years, his sentence pursuant to Penal Code section 664, is unconstitutional as it exceeds by three years, the statutorily prescribed punishment for the more specific offense proscribed by Penal Code section 217, as indicated at footnote 15 above. We agree (cf. *People* v. *Schueren,* 10 Cal.3d 553 [111 Cal.Rptr. 129, 516 P.2d 833]). Defendant also relies on *In re James M.,* 9 Cal.3d 517, 522 [108 Cal.Rptr. 89, 510 P.2d 33], wherein our Supreme Court held that since the general attempt statute, Penal Code section 664, limits its applicability to those cases where no provision is made by law for the punishment of attempts, *that an attempt crime for which the Legislature has enacted a more specific provision must be prosecuted and sentenced pursuant to the more specific statute.*

Defendant argues that the identical reasoning applies here since the Legislature has defined and prescribed the punishment for a more specific offense, namely, Penal Code section 217 pertaining to assault with intent to commit murder. Defendant's argument is consistent with the well known rule by which a specific legislative enactment controls a more general one. We agree that here, Penal Code section 217 precluded his charge and conviction pursuant to the general attempt statute, Penal Code section 664. The People, relying on *People* v. *Meriweather,* 263 Cal.App.2d 559, 563 [69 Cal.Rptr. 880], contend that defendant was properly charged pursuant to Penal Code section 664. They concede that no other case has decided this question but rely on *Meriweather* which held that the offense of assault with intent to commit murder defined and punished by Penal Code section 217 is distinct from attempted murder (Pen. Code, §§ 187, 664). We hold that defendant's basic sentence should have been based on Penal Code section 217 rather than Penal Code sections 187 and 664; accordingly, the judgment is affirmed, except for the sentence; the trial court is directed to resentence defendant pursuant to Penal Code section 217.

Kane, J., and Miller, J., concurred.

A petition for a rehearing was denied May 4, 1979.