[Crim. No. 36801. Second Dist., Div. Two. Oct. 29, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
JERRY AVIOS OTIS, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and William Blum, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Shunji Asari, Juliet H. Swoboda and Gelacio L. Bayani, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

COMPTON, J.—Defendant was charged in a two-count information with violating Penal Code section 245 (felonious assault) count I, and Penal Code section 217 (assault with intent to commit murder) count II. The crimes were allegedly committed on a single occasion against a single victim.

A jury found defendant guilty of both offenses and found that defendant used a deadly weapon in the commission of both offenses. The trial court imposed a one-year enhancement of the sentence for each offense. Defendant has appealed citing a number of errors in jury instructions, evidentiary rulings and in the sentencing. We reverse both counts.

Count I, the violation of Penal Code section 245, is a lesser and necessarily included offense in that charged in count II. (*People v. Avila* (1960) 178 Cal.App.2d 700 [3 Cal.Rptr. 297]; *People v. Marshall* (1957) 48 Cal.2d 394 [309 P.2d 456].) ■ When a jury finds a defendant guilty of both a greater and lesser necessarily included offense on the basis of a single act and the evidence is sufficient to support a conviction of the greater offense, the procedure is normally to vacate or reverse the conviction of the lesser offense. (*People v. Moran* (1970) 1 Cal.3d 755 [83 Cal.Rptr. 411, 463 P.2d 763].)

In the case at bench, the evidence supports the judgment as to both the greater offense and the lesser offense. We have concluded, however, that because of the error in the jury instructions as to count II, the greater offense, the judgment as to that count must be reversed. It fol-

lows then that both counts must be reversed for the reason that on a retrial the defendant may be convicted of one or the other of the two offenses but not both.[1]

The facts of the case are that defendant admittedly stabbed the victim approximately a dozen times with a knife. The defense was self-defense. Defendant offered evidence of a history of bad feelings between himself and the victim and he offered evidence of the victim's violent nature and of threats made to kill the defendant. Finally defendant's witnesses testified that prior to the stabbing, the victim attacked the defendant with a garden rake. This latter evidence was of course sharply contradicted by the prosecution witnesses.

■ Defendant contends that the trial court erred in refusing to give certain proffered instructions concerning the mental state necessary for the commission of an assault with intent to commit murder and in giving an erroneous instruction on that issue. With this contention we agree.

■ Defendant further contends that he was entitled to instructions on the lesser included offense of "assault with intent to commit manslaughter." With that contention we disagree.

■ The mens rea of the crime of an assault with intent to commit murder requires a specific intent to kill. No element of premeditation is required and hence the crime consists of an assault with an intent to commit either first or second degree murder. (*People* v. *Mize* (1889) 80 Cal. 41 [22 P.80]; *People* v. *Alexander* (1940) 41 Cal.App.2d 275 [106 P.2d 450, 916]; *People* v. *Bernard* (1946) 28 Cal.2d 207 [169 P.2d 636].)

While there is language in some Court of Appeal opinions (cf. *People* v. *Heffington* (1973) 32 Cal.App.3d 1 [107 Cal.Rptr. 859]) to the effect that it is more correct to refer to an "intent to murder" rather than an "intent to kill," it is, as a practical matter, difficult to conceive of a case in which a specific intent to murder, sufficient for a conviction of violating Penal Code section 217, could be found in anything other than a specific intent to take human life. While in all cases a defendant

---

[1]We feel compelled to comment that this case is another example of the too-frequent careless and unnecessary overpleading indulged in by some prosecutors. A single count information charging defendant with the greater offense would have been adequate and would have simplified the issues.

might not verbally articulate such an intent, it can generally be inferred from the circumstances and the means employed.

Where, as here, a defendant has admittedly committed an assault with an intent to take human life, the determination of whether that conduct constitutes a violation of Penal Code section 217 or some other form of criminal assault turns on whether the evidence discloses the existence of that state of mind amorphously described as "malice" which would be necessary to convict a defendant of murder in a case in which the victim dies.

A clearly manifested intent to kill generally will suffice to establish the element of malice. On the other hand, an intentional *killing* may amount only to manslaughter where a jury finds that an intentional killing was done without malice. (Pen. Code, § 192.)

■ It is at once apparent that when a defendant is charged with a violation of Penal Code section 217, the jury, in order to determine the presence or absence of the essential element of malice, must be instructed on these various principles of law which affect the determination of whether an unlawful homicide is murder or voluntary manslaughter.

Germane to the case at bench are the concepts of "heat of passion and provocation" and "imperfect self-defense." (*People* v. *Flannel* (1979) 25 Cal.3d 668 [160 Cal.Rptr. 84, 603 P.2d 1]; *People* v. *Best* (1936) 13 Cal.App.2d 606 [57 P.2d 168].)

"Heat of passion," as that term is described in the law, resulting from sufficiently legal provocation, which will negate malice in a homicide prosecution will similarly negate the malice necessary for a violation of Penal Code section 217.

Further, the intentional use of deadly force in a claimed self-defense may be found to be unreasonable and unjustified, while at the same time the circumstances and defendant's state of mind may be such as to negate malice. (*People* v. *Flannel, supra*, 25 Cal.3d 668.) This principle is equally applicable to a charge of violating Penal Code section 217. ■ Here the trial court refused proffered instructions on the elements of voluntary manslaughter. This error was compounded by the giving of CALJIC No. 8.11 defining malice, which instruction includes the statement that malice can be implied from the commission of a felony inherently dangerous to human life.

This latter statement would permit the jury to substitute the non-specific mens rea of assault with a deadly weapon (Pen. Code, § 245) for the more culpable intent required for a violation of Penal Code section 217. We cannot say that this error was harmless beyond a reasonable doubt.

Although we have concluded that the judgment must be reversed as to both counts for the reasons already stated, in order to guide the trial court on a retrial we feel it necessary to discuss defendant's contention concerning lesser included offenses.

As we have already indicated, a violation of Penal Code section 245 is a lesser and necessarily included offense in a violation of Penal Code section 217. Hence, if the evidence does not support a finding that defendant had the mens rea required for the higher offense then a verdict finding him guilty of violating Penal Code section 245 would be proper.

Defendant contends there is another possibility, to wit, a finding that he committed the offense of "assault with intent to commit manslaughter." If such a crime exists it would of necessity be "assault with intent to commit *voluntary* manslaughter" since an "assault with *intent* to commit *involuntary* manslaughter" would be a contradiction in terms.

There is no statute specifically defining the crime of "assault with intent to commit manslaughter." We are aware of a small number of cases which purport to say that such a crime exists by virtue of Penal Code section 221—a catch-all section which proscribes assault with the intent to commit any felony not mentioned in Penal Code section 220.[2] (Cf. *People* v. *Heffington, supra,* 32 Cal.App.3d 1; *People* v. *Moles* (1970) 10 Cal.App.3d 611 [89 Cal.Rptr. 226]; *People* v. *Stevenson* (1978) 79 Cal.App.3d 976 [145 Cal.Rptr. 301]; *People* v. *Gonzalez* (1972) 28 Cal.App.3d 1091 [104 Cal.Rptr. 530].) In each of those cases the central issue was the necessity for giving instructions on diminished capacity, and manslaughter principles in a prosecution for a violation of Penal Code section 217—the issue which, as far as this case is concerned, we have already disposed of. In those cases the determina-

[2]Penal Code section 220 reads as follows: "Every person who assaults another with intent to commit mayhem, rape, sodomy, oral copulation, or any violation of Section 264.1, 288 or 289 is punishable by imprisonment in the state prison for two, four, or six years."

tion of whether there is in fact such a crime as "assault with intent to commit manslaughter" was not necessary to the result. In each case its existence was simply assumed without critical analysis and the relationship of that crime to the crime of assault with a deadly weapon was not even discussed.

*People* v. *Gonzalez, supra*, involved a peculiar set of circumstances. There a defendant was charged with two counts of "assault with a deadly weapon with intent to commit murder." During trial the prosecutor obtained leave of court to amend the information to include additional counts, based on the same evidence, charging "assault with intent to commit manslaughter (Pen. Code, § 221)" and assault with a deadly weapon.

The reason for such a move appears to have been that at the time the punishment for the various offenses were such that assault with a deadly weapon carried the more severe punishment while a violation of Penal Code section 221 being the next most severe and a violation of Penal Code section 217 being punished the least severely of the three.

The *defense* offered an instruction to the jury which set out the abovementioned ranking of the severity of the crimes. With the prosecutor's concurrence the instruction was given.

Defendant was convicted of assault with a deadly weapon. The Court of Appeal affirmed the conviction on the grounds that the charge of assault with a deadly weapon was framed by the initial pleadings and that the defendant could not complain of an instruction which he himself had requested.

That case is not authority for the proposition that Penal Code section 221 is a necessarily included offense in that condemned by Penal Code section 217. It does point up the anomoly that can be created by attempting to "squeeze" Penal Code section 221 between Penal Code sections 217 and 245. At that time the result was that a conviction of Penal Code section 221, an ostensibly "lesser" offense, would have resulted in a more severe punishment than would conviction of the charged "greater offense."

At the present time the order of severity of punishment is: (1) Penal Code section 217 (two, four or six years); (2) Penal Code section 245

(two, three or four years); and (3) Penal Code section 221 (sixteen months, two or three years or one year in county jail or $1,000).

As we will point out, a determination that Penal Code section 221 includes the offense of "assault with intent to commit manslaughter" which, in turn, is included in a violation of Penal Code section 217 would create an anomoly under present law.

Since Penal Code section 217 requires an intent to kill with malice and Penal Code section 245 requires neither an intent to kill nor malice, the mens rea of "assault with intent to commit manslaughter," if there were such a crime, would necessarily be confined to an intent to kill without malice. Yet, as noted, the punishment would be less than for a violation of Penal Code section 245.

The fixing of different punishments for different crimes is generally based on the culpability of the state of mind of the offender. The more culpable the state of mind the greater need for deterrence, hence, the more severe the punishment. One offense is thus described as being "lesser" than another when the punishment for one is less than the other.

If, as defendant argues, Penal Code section 221 creates the crime of "assault with intent to commit manslaughter" the result is a crime with a more culpable mens rea than a violation of Penal Code section 245 but which carries a lesser punishment. This is an anomoly and absurdity which it must be presumed that the Legislature did not intend.

While it is semantically possible to find that the catchall language of Penal Code section 221 includes "assault with intent to commit manslaughter" the important questions are: did the Legislature so intend, and is such an inference necessary or helpful to the administration of justice? We view Penal Code section 221 as a legislative effort to proscribe those criminal assaults that are not otherwise effectively dealt with.

As to these types of assaults in which the only objective is the infliction of injury, Penal Code section 240, the basic statute, is at one end of the spectrum and covers attempts to apply nondeadly force. At the other end of the spectrum is Penal Code section 217 which punishes the attempt to apply deadly force with the intent to murder. Between those

two extremes is Penal Code section 245 which punishes an attempt to apply deadly force without the intent of murder.

In our opinion these three statutes adequately, effectively and fairly cover all conceivable situations. If the Legislature had felt otherwise it could have easily added manslaughter to those well-recognized crimes which are specifically enumerated in Penal Code section 220. To create a crime of "assault with intent to commit manslaughter" by inference from Penal Code section 221 would introduce an unnecessary and troublesome complication into the trial of these types of cases.[3]

The judgment as to both counts is reversed and the matter is remanded for a new trial.

Roth, P. J., and Fleming, J., concurred.

A petition for a rehearing was denied November 19, 1980.

---

[3]In our opinion the area of included offenses has been overextended and overly complicated and has created a great potential for compromise verdicts. In any given case a compromise verdict may be prejudicial to either the prosecution or the defense depending upon the facts.