[Crim. No. 10330. Third Dist. May 28, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES YOUNG, JR., et al., Defendants and Appellants.

COUNSEL

Robert Eli, under appointment by the Court of Appeal, for Defendants and Appellants.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Diana Beth Constantino and Carla J. Caruso, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**CARR, J.**—Each defendant herein was convicted by a jury of robbery (count I, Pen. Code,[1] § 211), second degree attempted murder of Janice Hostman (count II, §§ 664, 187), second degree attempted murder of Rebecca Sennett (count III, §§ 664, 187), second degree attempted murder of Patti Thomas (count IV, §§ 664, 187), receiving stolen property (count V, § 496) and conspiracy to commit robbery (count VII, §§ 182, 211). Defendants Young and Michael J. Miles were found to have used a firearm in the commission of the crimes charged in counts I-IV and enhancements were imposed on the sentence of Miles for each count as a result thereof. (§ 12022.5.) Young was found to have inflicted great bodily injury in the commission of the offenses charged in counts I-IV and enhancements were imposed thereon. (§ 12022.7.)

Defendants have jointly appealed alleging error by the trial court in 1) refusing jury instructions on assault with intent to commit murder

---

[1] All further references are to the Penal Code unless otherwise noted.

and assault with a deadly weapon as lesser included offenses to the charge of attempted murder; 2) giving instructions on implied malice; 3) denying defendants' motion for acquittal on the receiving stolen property charges because of insufficiency of the evidence; 4) failing adequately to state reasons for imposing consecutive sentences on the subordinate terms; 5) improperly enhancing defendant Young's sentence for attempted murder pursuant to Penal Code section 12022.7; 6) sentencing each defendant for robbery and attempted murder of Hostman in violation of Penal Code section 654's prohibition against multiple punishment, and 7) in sentencing defendant Miles to enhancements under Penal Code section 12022.5 (use of a firearm) for counts II, III and IV.

We review the essential facts.

At approximately 2 p.m. on October 5, 1978, defendants Michael Proctor and Young transacted business at the School Employees Credit Union. (SECU). They were recognized by teller Janice Hostman who had gone to the same high school with Young and had previously been acquainted with Proctor, a client at SECU.

At 5 p.m. that day Young and Miles robbed the credit union. They entered the credit union armed and proceeded in different directions accosting various employees and forcing them to lie on the floor. Young took the money from the teller's drawers of Hostman and Patti Thomas and ordered them and teller Rebecca Sennett to "hit the floor." Young then shot Hostman four times, in the arm, hip, back and abdomen. He also shot Sennett in the hip and Thomas in the knee.

Defendants fled and entered a 1977 green Ford Granada driven by Proctor. This car was later found in an alley along the block bordered by T, U, 23d and 24th Streets. It was determined that the getaway car, originally purchased new by Michael Anthony Feria, was repossessed in July 1978 but found missing from the dealer's lot in September 1978. Defendants' possession of this car was the basis for the receiving stolen property charge.

I

Defendants initially assert error in the refusal of the trial court to give instructions on assault with intent to commit murder and assault

with a deadly weapon as necessarily included lesser offenses to attempted murder.

■ No error lies in the refusal to instruct on a claimed lesser included offense unless the greater offense cannot be committed without *necessarily* committing the lesser offense. The test is one of abstract law and it does not matter if the evidence actually supports a possible finding of the lesser offense. (*People* v. *Bedolla* (1979) 94 Cal.App.3d 1, 9 [156 Cal.Rptr. 171]; *People* v. *Escarcega* (1974) 43 Cal.App.3d 391, 396-397 [117 Cal.Rptr. 595].)

■ Application of that rule to the case at bar demonstrates no error in the refusal to instruct on the two assault offenses. Attempted murder can be committed without committing assault with intent to commit murder. (*People* v. *Johnson* (1978) 81 Cal.App.3d 380, 388 [146 Cal.Rptr. 476].) The rationale is that attempted murder may be committed without an assault taking place. (*Id.*) The reasoning of *Johnson* also extends to assault with a deadly weapon which requires an assault, not an essential element for attempted murder. (*Id.*; 1 Witkin, Cal. Crimes, § 260, p. 246; *People* v. *Benjamin* (1975) 52 Cal.App.3d 63, 70-71 [124 Cal.Rptr. 799].)

## II

■ The defendants next contend error in the court's instructing on the implied malice portions of CALJIC Nos. 8.11[2] and 8.31.[3]

---

[2]CALJIC No. 8.11, as read to the jury, instructs that: "Malice" may be either express or implied.

"Malice is express when there is manifested an intention unlawfully to kill a human being.

"*Malice is implied when the killing results from an act involving a high degree of probability that it will result in death, which act is done for a base, antisocial purpose and with a wanton disregard for human life by which is meant an awareness of a duty imposed by law not to commit such acts followed by the commission of the forbidden act despite that awareness.*

"The mental state constituting malice aforethought does not necessarily require any ill will or hatred of the person killed.

"'Aforethought' does not imply deliberation or the lapse of considerable time. It only means that the required mental state must precede rather than follow the act."

[3]As read to the jury, CALJIC No. 8.31 states that: "Murder of the second degree is also the unlawful killing of a human being as the direct causal result of an act involving a high degree of probability that it will result in death, which act is done for a base, antisocial purpose and with wanton disregard for human life by which is meant an

The jury was additionally instructed that an attempt consists of a specific intent to commit the crime with a direct but ineffectual act towards its commission; on the definition of murder as the unlawful killing of a human being with malice aforethought; on the definitions of malice as express or implied; on the definitions of first degree murder, unpremeditated second degree murder resulting from an unlawful act dangerous to life. Moreover, they were told to consider all the instructions as a whole and to regard each in the light of all the others "and to disregard inapplicable instructions."

▆ Defendants rely primarily on *People* v. *Wein* (1977) 69 Cal. App.3d 79, 92 [137 Cal.Rptr. 814]; *People* v. *Broussard* (1977) 76 Cal.App.3d 193 [142 Cal.Rptr. 664][4] and *People* v. *Martinez* (1980) 105 Cal.App.3d 938 [165 Cal.Rptr. 11] for their assertion that the giving of the implied malice instructions constituted reversible error.

*People* v. *Martinez, supra*, 105 Cal.App.3d 938 did not involve an attempted murder charge but an assault with intent to commit murder pursuant to Penal Code section 217. As observed by this court in *People* v. *Heffington* (1973) 32 Cal.App.3d 1, 11 [107 Cal.Rptr. 859]: "The crime of assault with intent to commit murder requires a specific intent to murder, but without regard to any distinction between first and second degree murder. . . . Both first and second degree murder require the existence of the state of mind known as malice; aside from felony murder, a specific intent to kill is a necessary ingredient of first degree murder but not of second degree murder . . . it is incorrect to say that assault with intent to commit murder requires proof of specific intent to kill; more accurately, one should speak of specific intent to commit murder . . . ."

In *People* v. *Wein, supra*, 69 Cal.App.3d at page 92, the court stated the felony-murder rule has no application to a charge of attempted murder which requires a specific intent to take a human life, relying on *People* v. *Snyder* (1940) 15 Cal.2d 706, 708 [104 P.2d 639]. Since the jury was not instructed on the felony-murder rule, no error was found.

awareness of a duty imposed by law not to commit such acts followed by the commission of the forbidden act despite that awareness.

"*When the killing is the direct result of such an act, it is not necessary to establish that the defendant intended that his act would result in the death of a human being.*"

[4]*Broussard* simply determined that no crime of attempted voluntary manslaughter exists and conviction on such nonexistent crime impliedly acquitted defendant of attemped murder and attempted voluntary manslaughter, and defendant was entitled to a dismissal of the charges.

In *People* v. *Snyder, supra*, defendant was convicted of attempted murder, though the opinion neglects to state the degree. Reversal was predicated upon the court's instructions that "a person is presumed to intend to do that which he voluntarily and wilfully does in fact do, and is also presumed to intend all the natural, probable and usual consequences of his acts," the court finding attempted murder required a specific intent to kill which may not be based upon a presumption. We construe *Snyder* as holding that a specific intent may not be presumed from the mere doing of the criminal or wilful and wanton act but proof must be presented that the defendant possessed a specific intent to do the act or acts dangerous to human life with a knowledge of the probability of such danger.

█ In the case at bar, the court did not instruct on the felony-murder rule but did instruct on second degree murder resulting from an unlawful act dangerous to life. █ We perceive that in an attempted murder charge, where there are degrees of murder, as distinguished from assault with intent to commit murder, it is proper to instruct on the two degrees of murder. We suggest that various cases on this issue have blurred into oblivion the distinction between the specific intent required to commit the crime and the malice required as an element of the crime. Attempted murder requires an intent to commit murder, either first or second degree. Either degree requires that somewhat indefinable mental state of malice. The implied malice component of second degree murder may be described as a mental state encompassing these elements: *knowledge* that the act involves a high probability that death will result; a specific *intent* to do the act despite such knowledge; a base, antisocial *purpose* with wanton disregard for human life. In reality, in attempted second degree murder, we are confronted by dual aspects of intent. To sustain a conviction, there must exist a union of a specific intent to commit murder and a specific intent to do the act, which, if carried to conclusion, would result in murder.

*Martinez, supra*, and cases reaching the conclusion that express malice is a necessary component of any attempted murder charge are fusing the specific intent required to constitute an attempt and the element of malice, to the exclusion of implied malice. An attempted second degree murder charge or conviction is incompatible with the concept that only express malice will support the charge or conviction. This concept supports only one degree of attempted murder, first de-

gree, or simply put, no division into degrees.[5] ■ We find no error in the instructions as given.

Even if one were to assume that the implied malice instructions were error, it was certainly harmless error. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) Three vulnerable women, the tellers who had already been robbed, were shot execution-style as they lay on the floor, having been told to "Hit the floor" by defendants Young and Miles. Hostman was shot four times in the right arm, right hip, back and abdomen and still has a bullet near her spine; Sennett was shot in the left hip and Thomas in the left knee. The inference is strongly supported that the women were shot because they were potential identification witnesses and the intent was to kill them.

### III

■ Defendants' next contention is that the trial court erred in not granting their motion for acquittal on the receiving stolen property charge. That motion was based on an allegation of insufficient evidence, a factual determination to be made by the trial court. We are required to determine if there is substantial evidence to support the conclusion of the trier of fact. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 576, 578 [162 Cal.Rptr. 431, 606 P.2d 738].

■ A conviction for receiving stolen property requires substantial evidence that the property was stolen, the defendant was in possession of the property and the defendant knew the property was stolen. (*People* v. *Vann* (1974) 12 Cal.3d 220, 224 [115 Cal.Rptr. 352, 524 P.2d 824].) ■ Young and Miles claim no possession and all three argue no knowledge that the car was stolen.

Possession by Young and Miles is established by their entering the car as the getaway car driven by coconspirator Proctor. The fact that Young and Miles fled the credit union and immediately entered the car in question permits the inference that there was a joint possession between them and Proctor.

---

[5] We are cognizant that this result may obtain as far as punishment is concerned. Penal Code section 190 sets a sentence of fifteen years to life for second degree murder; Penal Code section 664, which sets the sentences for attempt, provides that for offenses carrying a maximum of life imprisonment, the punishment shall be five, seven or nine years.

Knowledge on behalf of all three that the car was stolen is also adequately established by the record. ■ "'Possession of recently stolen property is so incriminating that to warrant conviction there need only be, in addition to possession, slight corroboration in the form of statements or conduct of the defendant tending to show his guilt.'" (*People* v. *Banks* (1976) 62 Cal.App.3d 38, 42 [132 Cal.Rptr. 751].) ■ Here the defendants abandoned the car near the scene of the robbery at a time in close proximity thereto which leads inferentially to the conclusion the defendants knew the car was stolen. We find there is substantial evidence to support the receiving stolen property conviction.

## IV

■ Defendants assert the trial court failed to state its reasons for the imposition of consecutive sentences. (Pen. Code, § 1170, subd. (c); *People* v. *Walker* (1978) 83 Cal.App.3d 619, 622 [148 Cal.Rptr. 66].) They are wrong. For defendant Young the trial court specifically enunciated its reasons for imposing consecutive sentences by noting, on the record, that the crime involved acts and threats of violence which included Young's engaging in target practice before the crime and cocking his weapon before entering the credit union. (Cal. Rules of Court, rule 425(a)(2).) The same reasons were articulated on the record for defendant Miles. For defendant Proctor the court noted that the crimes involved had objectives that were predominantly independent of each other. (Cal. Rules of Court, rule 425(a)(1).) There was clearly no error.

## V

■ Defendant Young alleges that his enhancement under section 12022.7 was error. He suggests that the section's reference to attempts[6]

---

[6]"§ 12022.7 [Bodily harm inflicted during commission of felony not having bodily harm as an element.] Any person who, with the intent to inflict such injury, personally inflicts great bodily injury on any person other than an accomplice in the commission or *attempted* commission of a felony shall, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he has been convicted, be punished by an additional term of three years, unless infliction of great bodily injury is an element of the offense of which he is convicted.

"As used in this section, great bodily injury means a significant or substantial physical injury.

"This section shall not apply to murder or manslaughter or a violation of Section 451 or 452. The additional term provided in this section shall not be imposed unless the fact of great bodily injury is charged in the accusatory pleading and admitted or found to be true by the trier of fact."

precludes enhancement when the underlying crime is one of the four specific exceptions, or an attempted one, provided for in the statute. This argument has been rejected: "Because attempted murder is a separate and distinct crime, it does not fall within the four exceptions provided in the statute (murder, manslaughter, assault with a deadly weapon and assault by means of force likely to produce great bodily injury under § 245). The legislative inclusion of the four crimes as exceptions necessarily excludes any other exceptions [citation]." (*People v. Superior Court* (*Grilli*) (1978) 84 Cal.App.3d 506, 513, fn. 5 [148 Cal.Rptr. 740]; *People v. Gray* (1979) 91 Cal.App.3d 545, 551 [154 Cal.Rptr. 555].) We agree and find no error.

## VI

■ Defendants contend that multiple punishment for the robbery and the attempted murder of Janice Hostman is precluded by section 654. The test for determining if separate punishment for acts that constitute multiple statutory violations contravenes section 654 is the intent and objective of the actor. (*People v. Perez* (1979) 23 Cal.3d 545, 551 [155 Cal.Rptr. 176, 594 P.2d 1]; *People v. Beamon* (1973) 8 Cal.3d 625, 637 [105 Cal.Rptr. 681, 504 P.2d 905].) If defendant entertained multiple criminal objectives independent of and not merely incidental to each other, he can be punished separately for multiple violations committed in pursuit thereof, even though such objectives shared common acts or were part of an otherwise indivisible course of conduct and if two or more criminal acts can be isolated, punishment for both is proper. (*People v. Coleman* (1973) 32 Cal.App.3d 853, 859 [108 Cal.Rptr. 573].)

In the case at bar, the trial court specifically found that the shootings were the result of a separate intent and constituted a separate act from the robbery. The evidence fully supports that conclusion. There was no error.

## VII

■ Defendant Miles contends that his enhancements under section 12022.5 for the attempted murders (counts II, III, and IV) are error in light of the holding in *People v. Harvey* (1979) 25 Cal.3d 754, 761 [159 Cal.Rptr. 676, 602 P.2d 396], that consecutive sentences may not include section 12022.5 enhancements unless the felony is one listed in section 667.5, subdivisions (c)(1)-(7).

This issue was initially conceded by the Attorney General. However, by time of oral argument, the Legislature had enacted Assembly Bill No. 2123 (Stats. 1980, ch. 132 (hereafter the Act)), signed into law May 28, 1980, as an emergency statute which became effective May 29, 1980. The self-described intent of the Act is to "... clarify and reemphasize what has been the legislative intent since July 1, 1977." (*Id.*, § 1, subd. (c).)

Section 2 of the Act amends section 1170 Penal Code to explicitly incorporate paragraph (8) of subdivision (c) of section 667.5, so that enhancement is properly applied to any felony in which a firearm has been charged and proved as provided in Penal Code section 12022.5. The amendment specifically states that enhancement under section 1170.1, subdivision (a) is not limited to the specific felonies listed in subdivision (c) of section 667.5.[7]

The People contend this legislation must be applied retroactively. However, as an intermediate appellate court, we are bound by the doctrine of stare decisis and the rule of *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937] to follow *People* v. *Harvey, supra*, 25 Cal.3d 754 and to find the Act has prospective application only.[8] We therefore conclude defendant Miles' section 12022.5 enhancements for counts II, III and IV must be stricken from the judgment and sentence and we so order it.

Defendant Young, while not raising the issue, is entitled to the benefit of the *Harvey* holding as to his section 12022.7 enhancements. The Supreme Court specifically noted that its rationale in declaring section 12022.5 enhancements invalid for the consecutive sentences involved therein would apply to section 12022.7 enhancements because the same statutory provision governs both enhancements. (*People* v. *Harvey, supra*, p. 761; Pen. Code, § 1170.1 subd. (a).) We therefore order

---

[7]Section 2 of the Act provides that when a defendant receives a consecutive sentence for a violent felony as defined in Penal Code section 667.5, subdivision (c), "... including those offenses described in paragraph (8) of subdivision (c) of Section 667.5," his consecutive sentence is one-third of the middle term for the offense, plus one-third of any enhancements imposed pursuant to sections 12022, 12022.5, or 12022.7.

[8]This same conclusion has been reached by appellate district courts including this one, albeit on other grounds in some instances. (See *People* v. *Fulton* (1980) 109 Cal. App.3d 777 [167 Cal.Rptr. 436]; *People* v. *Harvey* (1980) 112 Cal.App.3d 132 [169 Cal.Rptr. 153]; *People* v. *Matthews* (1980) 108 Cal.App.3d 793 [167 Cal.Rptr. 8]; *People* v. *Cuevas* (1980) 111 Cal.App.3d 189 [168 Cal.Rptr. 519]; *People* v. *Savala* (1981) 116 Cal.App.3d 41 [171 Cal.Rptr. 882].)

Young's section 12022.7 enhancements imposed on counts II, III, and IV stricken from the judgment and sentence.

In all other respects the judgments are affirmed.

Paras, Acting P. J., and Finney, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.