[Crim. No. 23854. First Dist., Div. Four. June 20, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
DUAL ESCO MOORE, Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Jean R. Sternberg, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Clifford K. Thompson, Jr., and Christopher J. Wei, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CHRISTIAN, J.**[*]—Dual Esco Moore appeals from a judgment of imprisonment after a jury found him guilty of shooting at an inhabited dwelling (Pen. Code, § 246).

On July 26, 1980, Ida Gantt's teenage son was host at a birthday party in the basement of his mother's house in Oakland. At about midnight, appellant, codefendant Browner and a third man "crashed" the party and caused a commotion when asked to leave. Gantt, Leslie Fillmore and other adults went downstairs and told the men to leave. During the confrontation, Browner displayed a handgun.

The three men were escorted outside to a Cadillac which was parked across the street. Appellant got behind the wheel, while Browner went to the other side of the car and fired several shots at Gantt, Fillmore and the teenagers. The Cadillac sped off and returned a few minutes later. More shots were fired from the car. The car made a U-turn and again shots were fired as it passed the house. Fillmore chased the Cadillac; Browner fired shots at Fillmore's car. After the men abandoned the Cadillac, Fillmore disabled the vehicle.

About a half-hour later, shots were fired from an orange LeMans which drove by the house. Fifteen minutes after that, appellant and three other men drove up in a brown Thunderbird and three or four more shots were fired. Oakland Police Officer David Evans followed the Thunderbird and ultimately detained appellant. Browner was arrested several days later.

A bullet hole was found on Gantt's garage door and one of the living room windows appeared to have been shot out. Gantt's neighbor testified that as the last shot was fired, she heard something hit the ceiling of her house and saw plaster falling.

■ Appellant contends that because the trial court did not deliver an instruction similar to CALJIC No. 17.01[1] with respect to the charge of shooting

---

[*]Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

[1]CALJIC No. 17.01: "[The defendant] may be found guilty if the proof shows beyond a reasonable doubt that he committed any one or more of such acts, but in order to find the defendant guilty, all of the jurors must agree that he committed the same act or acts. It is not necessary that the particular act or acts committed so agreed upon be stated in the verdict."

at an inhabited dwelling (Pen. Code, § 246), the jury was permitted to convict him without unanimously agreeing on the same particular acts in finding guilt.

In criminal cases, the fundamental right to trial by jury includes the right to a unanimous verdict. (Cal. Const., art. I, § 16; *People* v. *Wheeler* (1978) 22 Cal.3d 258, 265 [148 Cal.Rptr. 890, 583 P.2d 748].) A court must instruct *sua sponte* on those general principles of law which are closely and openly connected with the facts and which are necessary for a jury's understanding of the case. (*People* v. *Sedeno* (1974) 10 Cal.3d 703, 715 [112 Cal.Rptr. 1, 518 P.2d 913], disapproved on another point in *People* v. *Flannel* (1979) 25 Cal.3d 668 [160 Cal.Rptr. 84, 603 P.2d 1]; *People* v. *Crawford* (1982) 131 Cal.App.3d 591, 596 [182 Cal.Rptr. 536].) Appellant contends that under these circumstances, CALJIC No. 17.01 should have been delivered *sua sponte*, citing, e.g., *People* v. *Crawford, supra*; *People* v. *Hefner* (1981) 127 Cal.App.3d 88, 96-97 [179 Cal.Rptr. 336]; *People* v. *Madden* (1981) 116 Cal.App.3d 212 [171 Cal.Rptr. 897].) Respondent suggests that such instructions need not be given *sua sponte* under the circumstances, relying on *People* v. *Vineberg* (1981) 125 Cal.App.3d 127, 139-140, footnote 10 [177 Cal.Rptr. 819], cert. den. 456 U.S. 945 [72 L.Ed.2d 468, 102 S.Ct. 2011]. In *Vineberg,* the court indicated that since the assertion that defendants may have been deprived of a unanimous jury decision was "not based in reality," *sua sponte* delivery of CALJIC No. 17.01 was not required. (125 Cal.App.3d at pp. 139-140.) *Vineberg* does not support respondent's contention that *sua sponte* delivery of the instruction was not required under the circumstances of this case.

Moreover, appellant made a written request for CALJIC No. 17.01, without specifying to which charge the instruction was related. (See Pen. Code, § 1093.5; *People* v. *Terry* (1969) 70 Cal.2d 410 [77 Cal.Rptr. 460, 454 P.2d 36], cert. den. 399 U.S. 911 [26 L.Ed.2d 566, 90 S.Ct. 2205].) Although the court gave the instruction with respect to the assault charge, CALJIC No. 17.01 was not delivered with respect to the shooting charge.

The failure to deliver this instruction was error. There was no certainty that the jury unanimously agreed that appellant committed some particular act of shooting at an inhabited dwelling house. Shots were fired at Gantt's house on at least three separate occasions. On each occasion the shots were fired from a different vehicle. The evidence suggests that shots also hit a neighbor's house. The shooting incidents began shortly after midnight and continued until about 2:30 a.m.

The verdict against appellant cannot be matched with certainty to any single one of these acts, each of which could support it. The use note to CALJIC No. 17.01 indicates that the instruction should be delivered "only for violation of a

statute under which any of several different acts is sufficient to constitute the offense." (CALJIC (4th ed. 1979) p. 255.) The instruction can thus be used when separate but similar unlawful acts are alleged. (*People* v. *Crawford, supra,* 131 Cal.App.3d 591, 596.) In the absence of such an instruction, the verdict is open to the unacceptable possibility that certain jurors might have found that appellant aided and abetted the firing of shots at Gantt's house from the Cadillac, while others were convinced that he aided and abetted only in the shots fired later on from the Thunderbird, without all the jurors at a minimum believing he aided and abetted the shooting that occurred any particular time.

■ Respondent contends that this case falls within the "continuous conduct" exception, which allows the court to refuse instruction where the charged offense, in itself, consists of a continuous course of conduct, or where the acts were so closely connected in time that they formed part of one transaction. (*People* v. *Diedrich* (1982) 31 Cal.3d 263, 282 [182 Cal.Rptr. 354, 643 P.2d 971].) The court in *People* v. *Madden, supra,* stated: "Conceptually, the exception of continuous conduct resulting in but one offense is quite limited. There is a fundamental difference between a continuous crime spree and continuous conduct resulting in one specific offense. The continuous conduct exception only really applies, if at all, to those types of offenses where the statute defining the crime may be interpreted as applying, on occasion, to an offense which may be continuous in nature such as failure to provide, child abuse, contributing to the delinquency of a minor, driving under the influence and the like [citations]." (116 Cal.App.3d at p. 218.)

The charged acts, which involve groups of several shots fired on several different occasions, constitute a continuous crime spree rather than a crime of continuous conduct. The statute involved, Penal Code section 246, cannot be interpreted as applying to an offense which is continuous in nature. Unlike continuous conduct crimes, such as possessory offenses, the acts that appellant is charged with are "fragmented as to time or space." (*People* v. *Wright* (1968) 268 Cal.App.2d 196, 198 [73 Cal.Rptr. 692].) The defendants fired shots in the direction of more than one house, involving more than one potential victim. (See *People* v. *McNeill* (1980) 112 Cal.App.3d 330 [169 Cal.Rptr. 313] [CALJIC No. 17.01 required where defendant fired shots in the direction of four people, since the jury might have come to different conclusions as to a particular victim of the assault].)

Nor were the acts so closely connected in time that they formed one continuous crime. The shooting incidents spanned a period of several hours, unlike the continuous conduct offenses in *People* v. *McIntyre* (1981) 115 Cal.App.3d 899 [176 Cal.Rptr. 3] (three acts of rape "within a matter of minutes") or *People* v. *Mota* (1981) 115 Cal.App.3d 227 [171 Cal.Rptr. 212] (victim repeatedly raped during one hour). Appellant and the other men even had time to change

cars twice in between assaults. The incidents are not part of one long "transaction," but rather are a series of separate offenses. (*People* v. *Diedrich, supra,* 31 Cal.3d 263, 282.) The exception thus does not apply.

■ Respondent claims that the error was harmless, relying on *Diedrich, supra,* which suggests that failure to instruct is nonprejudicial where the jury's verdict implies that it did not believe the only defense offered. (31 Cal.3d at p. 283.) In *Diedrich,* however, the court found that the first alleged act of bribery was simply denied while the second act of bribery was "explained," and thus held that the failure to deliver CALJIC No. 17.01 was prejudicial. Similarly, appellant denied being involved with the shots fired from the Cadillac and orange LeMans, claiming he was misidentified, while his involvement with the shots fired from the Thunderbird was explained with a story of abduction at gunpoint.

The possibility that the jurors may have come to different conclusions as to which particular act of discharging a firearm appellant aided and abetted vitiates the constitutionally required assurance of jury unanimity. While it is of course possible that the jurors agreed unanimously as to a particular act of shooting at an inhabited dwelling, such agreement would necessarily be fortuitous absent a proper instruction. (See *People* v. *McNeill, supra,* 112 Cal.App.3d 330, 336.) There is no way to "gauge the precise effect" of the error. (*People* v. *Gainer* (1977) 19 Cal.3d 835, 854 [139 Cal.Rptr. 861, 566 P.2d 997, 97 A.L.R.3d 73].) Since we cannot assume that the jurors unanimously agreed on the act constituting the offense charged, we have no assurance that a miscarriage of justice did not occur. (*People* v. *Gainer, supra,* 19 Cal.3d 835, 851-855; *People* v. *Hefner, supra,* 127 Cal.App.3d 88, 97; *People* v. *Madden, supra,* 116 Cal.App.3d at p. 219; *People* v. *McNeill, supra,* 112 Cal.App.3d at p. 336.) The judgment of conviction must thus be reversed.

■ Although appellant's conviction must be reversed because of the court's failure to deliver an instruction insuring jury unanimity, appellant's other contention, that the court failed to instruct on the elements of a lesser included offense, will be discussed because the issue may recur on retrial. Appellant and Browner requested that the jury be instructed on the elements of Oakland Municipal Code section 2-2.14 (firearms and fireworks). The ordinance states in relevant part: "It shall be unlawful for any person to at any time fire or discharge, or cause to be fired or discharged, any gun . . . pistol . . . or firearm of any kind . . . within the limits of the City of Oakland . . . ." The court declined to give this instruction; appellant contends this was error.

■ A trial court must give requested instructions on the elements of a necessarily included offense where the defendant proffers evidence substantial enough to merit consideration by the jury. (*People* v. *Wickersham* (1982) 32

Cal.3d 307, 324 [185 Cal.Rptr. 436, 650 P.2d 311]; *People* v. *Flannel, supra,* 25 Cal.3d 668, 684, fn. 12.) However, it is proper to refuse to instruct on a claimed lesser included offense unless, when considered in the abstract, the greater offense as a matter of law cannot be committed without *necessarily* committing the lesser offense. (*People* v. *Pendleton* (1979) 25 Cal.3d 371, 382 [158 Cal.Rptr. 343, 599 P.2d 649]; *People* v. *Young* (1981) 120 Cal.App.3d 683, 690 [175 Cal.Rptr. 1].)

■ The charged shooting can be committed without necessarily violating Oakland Municipal Code section 2-2.14 since section 2-2.14 prohibits the discharge of firearms only "within the limits of the City of Oakland," and section 246 can be violated anywhere within the state. In other words, the element of shooting within Oakland city limits is present in section 2-2.14, the purported lesser included offense, but not in section 246. ■ An offense can be considered necessarily included in a greater offense only when all elements of the lesser offense are included in the elements of the greater offense; if any element necessary to establish the lesser offense is not necessary to proof of the greater offense, the lesser offense is not an included one. (*In re Stanley E.* (1978) 81 Cal.App.3d 415, 420 [146 Cal.Rptr. 232]; *People* v. *Warren* (1963) 223 Cal.App.2d 798, 800 [36 Cal.Rptr. 127].) ■ Since Penal Code section 246 does not require the shooting to have occurred in Oakland, section 2-2.14 cannot be a necessarily included offense.

Although the shootings in fact took place in Oakland, section 2-2.14 is not converted into a lesser included offense. It is of no consequence that the evidence at trial might establish guilt of the lesser offense. (*People* v. *Bedolla* (1979) 94 Cal.App.3d 1, 9 [156 Cal.Rptr. 171]; *People* v. *Escarcega* (1974) 43 Cal.App.3d 391, 396-397 [117 Cal.Rptr. 595].) The test is one of abstract law (*People* v. *Young, supra,* 120 Cal.App.3d at p. 690), and *in the abstract,* section 246 does not include the Oakland ordinance. And since the information did not allege that the shooting took place in the City of Oakland, section 2-2.14 is not a lesser included offense under the accusatory pleading test. (*People* v. *Anderson* (1975) 15 Cal.3d 806, 809 [126 Cal.Rptr. 235, 543 P.2d 603]; *People* v. *Marshall* (1957) 48 Cal.2d 394 [309 P.2d 456].) Since Oakland Municipal Code section 2-2.14 was not a necessarily included offense, the court's failure to deliver the requested instruction was not error.

The judgment is reversed.

Caldecott, P. J., concurred.

POCHÉ, J.—I concur fully in the judgment of reversal and in the rationale underlying that determination. However, I do not join in the suggestion that the trial court upon retrial should refrain from instructing upon Oakland Municipal

Code section 2-2.14 which provides in relevant part: "It shall be unlawful for any person to at any time fire or discharge, or cause to be fired or discharged, any gun, . . . pistol, . . . or fire-arm of any kind, . . . within the limits of the City of Oakland; . . ."

Appellant was tried and convicted on an information charging a violation of Penal Code section 246,[1] shooting at an inhabited dwelling house. This shooting occurred in Oakland. It is thus impossible for appellant in so violating section 246 not to have violated the Oakland ordinance.

Appellant requested that the jury be instructed on a violation of Oakland Municipal Code section 2-2.14. This court validates the trial court's refusal to give the instruction on the basis that a violation of the ordinance fits neither "the abstract statutory elements" definition nor "the accusatory pleading test" of a lesser included offense. I agree that the fit is not perfect but I fail to see how justice is served by refusing the instruction.

In my view refusal to give the requested instruction conflicts with the enunciation of the trial court's duty as set forth in *People* v. *Wickersham* (1982) 32 Cal.3d 307 [185 Cal.Rptr. 436, 650 P.2d 311]. There, Chief Justice Bird, speaking for the majority, put it this way in a discussion of the legal underpinnings of the lesser included offense doctrine and the role of the trial court therein: "The trial court functions both as a neutral arbiter between two contesting parties and as the jury's guide to the law. This role requires that the court fully instruct the jury on the law applicable to each particular case. ' "It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case." [Citation.] That obligation has been held to include giving instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present [citation], but not when there is no evidence that the offense was less than that charged. [Citations.]' . . . The fulfillment of this obligation ensures that the jury will consider the full range of possible verdicts—not limited by the strategy, ignorance, or mistakes of the parties. The jury should not be constrained by the fact that the prosecution and defense have chosen to focus on certain theories. 'Just as the People have no legitimate interest in obtaining a conviction of a greater offense than that established by the evidence, a defendant has no right to an acquittal when that evidence is sufficient to establish a lesser included offense. [Citation.]' . . . Furthermore, where counsel is not aware of alternative verdicts or incorrectly believes them

---

[1]Unless otherwise indicated, all further statutory references are to the Penal Code.

to be irrelevant to the case, the trial court's action will avoid an unwarranted all-or-nothing choice for the jury and will ensure that the verdict is no harsher or more lenient than the evidence merits. These policies reflect concern both for the rights of persons accused of crimes and for the overall administration of justice." (*Id.*, at pp. 323-324.)

Here a defendant upon hearing evidence that he shot at a residence in Oakland asked that the jury be instructed that shooting a firearm within the city limits violates the Oakland Municipal Code. Giving that instruction upon retrial "will avoid an unwarranted all-or-nothing choice for the jury and will ensure that the verdict is no harsher or more lenient than the evidence merits."[2] (*Id.*, at p. 324.)

I would instruct the trial court to honor appellant's request for a jury instruction on Oakland Municipal Code section 2-2.14.

---

[2]Appellant's contention on appeal is that the evidence gives rise to a dispute as to whether he actually fired at the dwelling in question, or simply discharged a firearm in the vicinity but not at the dwelling.