Filed 9/4/13  P. v. Hutt CA3
Received for posting 9/6/13

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**COPY**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

|  |  |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>DAVID DALE  HUTT,<br><br>     Defendant and Appellant. | C069685<br><br>(Super. Ct. Nos. CM032095,<br>CM034094) |

This case comes to us pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *People v. Kelly* (2006) 40 Cal.4th 106, 110, 124 (*Kelly*).

Having reviewed the record as required by *Wende*, we have found a significant error.  The trial court wrongly found defendant in violation of probation on case No. CM032095 based on a crime he committed before he was on probation.  We also note that the trial court erred by "staying" the Penal Code section 667.5, subdivision (b) prior prison commitment enhancement in case No. CM034094.

Accordingly, we vacate the probation violation and strike the corresponding prison sentence.  As modified, we affirm the judgment.  However, we remand the case with

1

directions to the trial court to exercise its discretion to reinstate probation in case No. CM032095 or terminate probation in lieu of defendant's prison sentence in case No. CM034094. The trial court is also directed to exercise its discretion by resentencing defendant on the prior prison commitment enhancement the court ordered "stayed" in case No. CM034094 or striking it pursuant to Penal Code section 1385, subdivision (a).

We provide the following description of the facts and procedural history of the case. (*Kelly*, *supra*, 40 Cal.4th at p. 124.)

## FACTUAL AND PROCEDURAL BACKGROUND

Geraldine Clark left her trailer and most of her belongings on June 17, 2010 to care for her ailing son. She returned on September 25 or 26, 2010, to find that most of her possessions had been stolen. What had not been stolen had been damaged.

Floyd Wilkins lived directly across from Clark. In July 2010, defendant was staying with Wilkins. During that time, defendant gave Wilkins some costume jewelry. Wilkins told defendant he did not want the jewelry if it was stolen, and defendant said, "it's all good, you don't have to worry about it." Defendant moved out of Wilkins's home at the end of July and moved into a trailer on Howard Covert's property. After defendant moved out of Wilkins's home, Lisa Guertner moved in. Wilkins gave the jewelry, which was in three plastic bags, to Guertner.

About one month before Clark's return, Guertner noticed the door to Clark's trailer was ajar and informed Wilkins. Wilkins contacted the manager of the trailer park, who called law enforcement to investigate. Deputy Sheriff Dave Ennes responded to the call. The door of the trailer was open, and inside the trailer there was "stuff everywhere. Piles of personal belongings on the floor, all over the . . . inside of the trailer."

Shortly after Clark's return, Guertner visited her. Guertner was wearing earrings that belonged to Clark. Upon learning they were Clark's earrings, Guertner returned them. The earrings had been in one of the plastic bags of jewelry that defendant had given to Wilkins. Guertner returned two bags of jewelry to Clark; she had given the third

2

bag to a friend. Clark identified the jewelry as hers. Some of Clark's jewelry remained missing, as well as a plasma television, several commemorative coin collections and 250-300 cans of food. One of the stolen rings was her mother's wedding ring, which was broken. Clark was also missing two Raiders jackets, and a number of autographed sports photographs, some of which included personalized signatures to her son. Clark estimated her losses to be between $15,000 and $17,000.

As noted, defendant moved from Wilkins's home to a trailer on Covert's property. Covert had known defendant for 20 years. Defendant stayed at the trailer for three weeks to a month, until August 25, 2010, when defendant was remanded to custody.

Defendant gave Covert's wife, Sarah Osa, sports photographs. Covert did not see defendant with the photographs, but Osa did. Defendant also showed Covert and Osa boxes of coins. Both Covert and Osa had seen defendant wearing a Raiders jacket.

Defendant gave Osa jewelry and coins, which she then sold at a coin and jewelry store. Osa gave defendant the money from the sale of the coins. Osa was required to show her identification to make the sales. Defendant told her he could not make the transaction because he did not have any identification. Osa later found out this was not true. One of the rings Osa sold was a broken wedding ring. Defendant also brought Osa 20-25 cans of food.

Covert found Clark's new Raiders jacket and additional autographed pictures in the shed on his property. The shed was right outside the trailer defendant stayed in, and defendant had access to it. Covert returned the items he had found to Clark. Covert also gave Clark and Detective Ryan Gsell permission to search the trailer where defendant stayed. Clark found one of her suitcases in the trailer's closet. The suitcase was empty. It previously had contained two Raiders jackets and autographed sports pictures.

Detective Gsell interviewed defendant. He showed defendant the stolen sports photographs and asked defendant if he had ever seen them. Defendant responded that he had seen them in his trailer. Gsell asked if defendant thought the pictures were stolen and

defendant answered, "I couldn't say no; I couldn't say yes." Defendant denied wearing a Raiders jacket and claimed he had purchased the canned food he brought to Osa with food stamps.

A number of the witnesses had challenges made to their credibility. Guertner had two prior convictions and admitted having been a heroin addict. Wilkins previously had been convicted of residential burglary, robbery, felony drunk driving and escape from jail or prison. Covert had a prior joyriding felony conviction and his wife, Osa, had been having an affair with defendant.

### Case No. CM032095

In January 2010, approximately six months before the Clark burglary, defendant pleaded no contest to forgery (Pen. Code, § 470, subd. (d))[1] and admitted a prior prison term allegation (§ 667.5, subd. (b)), which was based on a conviction for a violation of section 1320, subdivision (b), on September 13, 2005. Pending sentencing, defendant was released on his own recognizance (OR), with a condition that he attend a drug treatment program. The sentencing hearing was repeatedly continued until August 25, 2010. On August 25, 2010, defendant tested positive for methamphetamine. The court revoked his OR release and defendant was remanded to custody.

On December 15, 2010, defendant was sentenced to the upper term of three years, plus one year for the prior prison term enhancement. Execution of sentence was "stayed" and defendant was granted three years' probation. One of the conditions of probation was that defendant complete a residential substance abuse treatment program. Two months after sentencing, in February 2011, a petition for violation of probation was filed alleging defendant had terminated his participation in the drug treatment program.

---

[1] Undesignated statutory references are to the Penal Code.

**Case No. CM034094**

In March 2011, defendant was charged in count 1 with residential burglary (§ 459) and in count 2 with receiving stolen property (§ 496, subd. (a)), both counts stemming from the burglary of Clark's home.  It was also alleged that defendant had served a prior prison term based on the same September 13, 2005 violation of section 1320, subdivision (b) (§ 667.5, subd. (b)) alleged in case No. CM032095 and that defendant had committed the offense while on bail or released on OR in case No. CM032095 (§ 12022.1).  The information alleged that count 1 occurred on or about and between June 17, 2010 and August 23, 2010, and that count 2 occurred on or about and between August 23, 2010 and August 25, 2010.

Defendant was acquitted of the burglary charge, but convicted of receiving stolen property.  He admitted the truth of both enhancement allegations.  The court also found, by virtue of his conviction for receiving stolen property in this case, defendant had violated probation in case No. CM032095.  The court made no findings related to the allegation that defendant had violated his probation by leaving the drug treatment program.

### Sentencing

In case No. CM034094, defendant was sentenced to three years for receiving stolen property and two years for the on-bail/OR enhancement.  In case No. CM032095, the court sentenced defendant to eight months, to be served consecutively to the term imposed on case No. CM034094.

The trial court "stayed" the one-year sentence for the prior prison commitment enhancement in case No. CM034094.  However, in case No. CM032095, where the same prison commitment had been charged and admitted, the court imposed a one-year sentence for the prison prior commitment consecutive to the eight-month sentence it imposed as a result of a purported violation of probation.

5

Various fines and fees were imposed and defendant was awarded 755 days of presentence custody credits.

## DISCUSSION

We appointed David D. Martin of Alameda, California, to represent defendant on appeal. Counsel filed an opening brief that sets forth the facts of the case and requests this court to review the record and determine whether there are any arguable issues on appeal. (*Wende*, *supra*, 25 Cal.3d 436.) Defendant was advised by counsel of the right to file a supplemental brief within 30 days of the date of filing of the opening brief.

Defendant filed a supplemental brief claiming: (1) there is insufficient evidence to support his conviction, (2) juror misconduct, and (3) he was wrongly convicted of both a violation of probation and committing the offense while on bail/OR. We find no merit in defendant's first two claims. However, we must conclude that the trial court erred when it found that defendant had violated his probation.

### I. Substantial Evidence

"On appeal, the test of legal sufficiency is whether there is substantial evidence, i.e., evidence from which a reasonable trier of fact could conclude that the prosecution sustained its burden of proof beyond a reasonable doubt. [Citations.] Evidence meeting this standard satisfies constitutional due process and reliability concerns. [Citations.] [¶] While the appellate court must determine that the supporting evidence is reasonable, inherently credible, and of solid value, the court must review the evidence in the light most favorable to the prosecution, and must presume every fact the jury could reasonably have deduced from the evidence. [Citations.] Issues of witness credibility are for the jury. [Citations.]" (*People v. Boyer* (2006) 38 Cal.4th 412, 479-480.)

"The same standard [of review] applies when the conviction rests primarily on circumstantial evidence. [Citation.] Although it is the jury's duty to acquit a defendant if it finds the circumstantial evidence susceptible of two reasonable interpretations, one of which suggests guilt and the other innocence, it is the jury, not the appellate court that

6

must be convinced of the defendant's guilt beyond a reasonable doubt.  [Citation.]  ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment.  [Citation.]" ' [Citation.]" (*People v. Kraft* (2000) 23 Cal.4th 978, 1053-1054; see also *People v. Johnson* (1980) 26 Cal.3d 557, 578.)  As this court has noted, before we can set aside a verdict for insufficiency of the evidence, " 'it must clearly appear that on no hypothesis whatever is there sufficient substantial evidence to support the verdict of the [finder of fact].' [Citation.]" (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573.)

A defendant is guilty of receiving stolen property if: (1) the property was stolen, (2) defendant knew the property was stolen, and (3) defendant had possession of the stolen property.  "The knowledge element of receiving stolen property is normally proved not by direct evidence but by an inference from circumstantial evidence.  [Citation.]  [¶] . . . [¶] . . . In routine circumstances, the knowledge element is inferred from the defendant's failure to explain how he came to possess a stolen item or his offer of an unsatisfactory explanation or from suspicious circumstances attendant upon his possession of the item." (*People v. Alvarado* (1982) 133 Cal.App.3d 1003, 1019-1020.)  Evidence need not be strong to be sufficient. (*Id.* at p. 1020.)  " ' "Possession of recently stolen property is so incriminating that to warrant conviction there need only be, in addition to possession, slight corroboration in the form of statements or conduct of the defendant tending to show his guilt." ' [Citation.]" (*People v. Young* (1981) 120 Cal.App.3d 683, 694.)

Bags of jewelry, commemorative coins, canned food, Raiders jackets and autographed sports photographs were stolen from Clark's trailer.  Defendant gave Wilkins three bags that contained jewelry stolen from Clark.  Defendant had Osa pawn coins and jewelry, pretending he could not complete the transactions himself.  In so doing, he avoided using his own identification in making these sales.  Among the items

pawned was a ring matching the description of one stolen from Clark. Defendant was seen in possession of commemorative coins, Raiders jackets, and sports photographs stolen from Clark. Clark's suitcase, which had held the Raiders jackets and some of the autographed photographs, was found in the trailer where defendant was staying. When asked about his knowledge of whether certain property was stolen, rather than simply deny the matter, defendant gave oblique responses such as, "I couldn't say no; I couldn't say yes." This is substantial evidence to support the receipt of stolen property conviction.

## II. Purported Jury Misconduct

Defendant contends jurors were biased by overhearing a conversation between witnesses, the victim and the prosecutor. We find no prejudicial error.

During jury selection, there were some discussions in the courtroom hallway between the prosecutor, the victim and a witness. Two prospective jurors were aware of the conversation and one overheard parts of it. After discussions with the court, and interviews of the jurors, the parties continued their voir dire. Ultimately, three prospective jurors were excused for cause and no peremptory challenges were used.

Defendant accepted the jury as constituted and made no claim that any seated juror should be excused. There is no claim counsel was prevented from making reasonable inquiry into the fitness of any venire person to serve on the jury. (*People v. Wright* (1990) 52 Cal.3d 367, 419, disapproved on other grounds by *People v. Williams* (2010) 49 Cal.4th 405, 460.) Moreover, it is not clear whether any of the prospective jurors who may have overheard the conversation actually sat on the jury, the defense had all of its peremptory challenges remaining when it accepted the jury, and it did not express dissatisfaction with the jury as sworn. Therefore, to the extent there was any error, it could not have been prejudicial. (*People v. Burgener* (2003) 29 Cal.4th 833, 866; *People v. Carpenter* (1997) 15 Cal.4th 312, 354.)

8

### III. Probation Violation and On-Bail/OR Enhancement

Defendant contends he could not be convicted of both a probation violation and the on-bail/OR enhancement. Defendant is correct, as he was not on probation at the time he committed the receiving stolen property offense in case No. CM034094.

In case No. CM032095, after defendant pleaded no contest to forgery, he was released on OR. He remained released on OR between the time of his plea in January 2010 and August 25, 2010, when he was remanded to custody after testing positive for methamphetamine. At that time, he had not been sentenced and was not on probation. Defendant was not placed on probation in case No. CM032095 until December 15, 2010. The receipt of stolen property offense in case No. CM034094 was committed sometime between August 23 and August 25, 2010, prior to defendant's remand for testing positive.

On February 14, 2011, a petition for violation of probation was filed, alleging defendant had violated his probation in case No. CM032095 by terminating his participation in a substance abuse rehabilitation program without permission of the probation officer. This was not, however, the basis of the finding that defendant had violated his probation. Rather, the court found "[b]y virtue of the defendant's having been found guilty of [section] 496(a), the Court is finding he's in violation of probation in [case No.] CM032095."

Because defendant was not on probation at the time he committed the receiving stolen property offense, he could not have violated that probation by committing that offense. Thus, the trial court erred when it found defendant had violated probation as a result of his receiving stolen property conviction. Accordingly, we vacate the probation violation[2] and strike the sentence imposed as a result of finding defendant in violation of his probation.

---

[2] Because we vacate the probation violation, defendant is still on a three-year grant of probation in case No. CM032095.

9

## IV. Prior Prison Sentence Enhancement

We have found another error. This one relates to the prior prison commitment enhancement based on the September 13, 2005 conviction of section 1320, subdivision (b), charged in both cases. In the newer case, case No. CM034094, the court ordered that the enhancement be "stayed." However, the trial court imposed the one-year sentence for the enhancement in case No. CM032095, the case for which we have concluded the court erroneously found defendant had violated probation.

Aside from the fact defendant was not on probation in case No. CM032095 and thus could not have been sentenced to prison with a consecutive term for the enhancement based on a finding that he violated his probation on that case, the court also erred in ordering the enhancement "stayed" in case No. CM034094. "Prior prison term enhancements may be imposed or stricken but not stayed." (*People v. Jordan* (2003) 108 Cal.App.4th 349, 368; *People v. Jones* (1992) 8 Cal.App.4th 756, 758.) Thus, not only was the prison sentence on case No. CM032095 a legally unauthorized sentence, the sentence "staying" the prison enhancement in case No. CM034094 was also legally unauthorized. (*People v. Bradley* (1998) 64 Cal.App.4th 386, 391 (*Bradley*) [the failure to impose or strike a prior prison commitment enhancement is a legally unauthorized sentence].) Thus, on remand, the trial court must decide what to do with the prior prison commitment enhancement it previously stayed on case No. CM034094. The court has the discretion to impose it. A legally unauthorized sentence "is subject to being set aside judicially and is no bar to the imposition of a proper judgment thereafter." (*People v. Serrato* (1973) 9 Cal.3d 753, 764; see also *People v. Torres* (2008) 163 Cal.App.4th 1420, 1432; *People v. Craig* (1998) 66 Cal.App.4th 1444, 1449.) Or, in the alternative, the court has the discretion to strike the prior prison commitment in case No. CM034094 pursuant to Penal Code section 1385, subdivision (a). However, "if a trial judge exercises the power to strike pursuant to section 1385, subdivision (a), the reasons for

10

the exercise of discretion must be set forth in writing in the minutes." (*Bradley*, *supra*, 64 Cal.App.4th at p. 391.)

## V. Conclusion

Having undertaken an examination of the entire record, we find no other arguable errors that would result in a disposition more favorable to defendant.

## DISPOSITION

The finding that defendant violated his probation in case No. CM032095 is vacated and the sentence imposed as a result of that finding is stricken. The trial court is directed, in the exercise of its discretion, to reinstate probation on case No. CM032095 or terminate probation in that case in lieu of the prison sentence on case No. CM034094. In case No. CM034094, the court is directed to impose a consecutive term of one year for the prior prison commitment enhancement it previously stayed or to strike the enhancement pursuant to section 1385 if the court finds it is in the interests of justice to do so. The trial court is further directed to prepare an amended abstract of judgment reflecting the modifications to the judgment and forward a certified copy of the amended abstract to the Department of Corrections and Rehabilitation. As modified, the judgment is affirmed.


                                      MURRAY        , J.

We concur:


             BUTZ           , Acting P. J.


           DUARTE       , J.

11