Filed 12/4/15  P. v. Maciel CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SARA MACIEL<br><br>    Defendant and Appellant. | H041915<br>(Santa Clara County<br>Super. Ct. No. C1491885) |

In November 2014, appellant Sara Maciel pleaded no contest to one felony count of buying or receiving a stolen motor vehicle in violation of Penal Code section 496d.[1] Ultimately, appellant was granted probation on various terms and conditions.  However, relevant to this appeal, at her sentencing hearing, appellant filed a brief in which she argued that her conviction for buying or receiving a stolen motor vehicle should be reduced to a misdemeanor following the passage of Proposition 47.  Proposition 47 is known as "the Safe Neighborhoods and Schools Act" (the Act), and is codified in section 1170.18.  The trial court denied appellant's request.

In this timely appeal, appellant claims that violations of section 496d are misdemeanors when the value of the property is less than $950, and therefore the trial court erred in denying her request to reduce her conviction to a misdemeanor.  Appellant concedes that section 496d was not specifically amended by Proposition 47; however, she

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

argues that section 496d should be treated substantively the same as section 496—buying or receiving stolen property.  We disagree and affirm the judgment.

*Discussion*

Effective November 5, 2014, the voters approved Proposition 47, which, among other things, "[r]equire[s] misdemeanors instead of felonies for nonserious, nonviolent crimes such as petty theft and drug possession, unless the defendant has prior convictions for specified violent or serious crimes."  (Voter Information Guide, Gen. Elec. (Nov. 4, 2014) text of Prop. 47, § 3, p. 70 (Voter Information Guide).)

Proposition 47 was intended to reduce penalties "for certain nonserious and nonviolent property and drug offenses from wobblers or felonies to misdemeanors." Those crimes were identified as "Grand Theft," "Shoplifting," "Receiving Stolen Property," "Writing Bad Checks," "Check Forgery," and "Drug Possession." (Voter Information Guide, *supra*, analysis of Prop. 47 by Legis. Analyst, pp. 35-36.)  The Act added section 1170.18 to the Penal Code.  Subdivision (a) of that section lists the former felonies that are reduced to misdemeanors under certain conditions:  Health and Safety Code sections 11350, subdivision (a), 11357, subdivision (a), and 11377, subdivision (a); and sections 459.5, subdivision (a), shoplifting; 473, subdivision (b), forgery; 476a, subdivision (b), issuing a check without sufficient funds; 490.2, subdivision (a), petty theft; 496, subdivision (a), receiving stolen property; and 666, subdivision (a), petty theft with a prior theft conviction.  However, the list does not include section 496d, buying or receiving a stolen motor vehicle.

As can be seen, under the Act, receiving stolen property (§ 496, subd. (a)), is now a misdemeanor, as is auto theft (§ 487, subd. (d)(1), if the value of the stolen property or vehicle does not exceed $950.  (§ 490.2, subd. (a) [notwithstanding section 487 or any other provision of law defining grand theft, obtaining any property by theft where the value of the money, labor, real or personal property taken does not exceed $950 shall be considered petty theft and shall be punished as a misdemeanor].)

2

As noted, appellant contends that we must treat a violation of section 496d—buying or receiving a stolen vehicle—substantively the same as a violation of section 496—buying or receiving stolen property.

We independently determine issues of law, such as the interpretation and construction of a statute. (*People v. Love* (2005) 132 Cal.App.4th 276, 283-284.

In interpreting a voter initiative, this court applies the same principles that govern the construction of a statute. (*People v. Canty* (2004) 32 Cal.4th 1266, 1276.) To construe the Act to include an amendment to the crime of buying or receiving a stolen vehicle would violate established rules of statutory construction. " ' "When statutory language is clear and unambiguous, there is no need for construction and courts should not indulge in it." [Citation.]' [Citation.]" (*People v. Hendrix* (1997) 16 Cal.4th 508, 512.) Plainly, section 496d does not appear in section 1170.18.

Generally, the statutory interpretation canon *expressio unius est exclusio alterius* (*expressio unius*) means that inclusion of one thing in a statute indicates exclusion of another thing not expressed in the statute. (*Gikas v. Zolin* (1993) 6 Cal.4th 841, 852.) The canon *expressio unius* has force when the items expressed in a statute are members of an " 'associated group or series,' " which justifies the conclusion that items not mentioned were excluded by deliberate choice, not inadvertence. (*Barnhart v. Peabody Coal Co.* (2003) 537 U.S. 149, 168.) For example, the court in *People v. Gray* (1979) 91 Cal.App.3d 545 (*Gray*) determined that the legislative inclusion of only four crimes as exceptions to the sentence enhancement for great bodily injury in the commission of a felony (§ 12022.7) demonstrated the legislative intent to exclude other crimes, such as attempted murder, from the list. (*Gray*, *supra*, at p. 551.) Thus, the court held that the enhancement for attempted murder was proper. (*Ibid.*) As a result, where a statute lists specific exemptions, courts may not infer additional exemptions unless there is an obvious legislative intent that such additional exemptions are intended. (*Wildlife Alive v.*

3

*Chickering* (1976) 18 Cal.3d 190, 195, superseded by statute as stated in *Berkeley Hillside Preservation v. City of Berkeley* (2015) 60 Cal.4th 1086, 1107.)

Here, similar to *Gray*, section 1170.18 lists a specific series of crimes that are reduced to misdemeanors, and that list does not include the offense of buying or receiving a stolen motor vehicle. The intent to limit application of the Act to the listed offenses is obvious—the plain language of the statute states that those particular code sections have been "added or amended" by the Act. (§ 1170.18, subd. (a).) The logical inference is that any section not added or amended by the Act is not included or affected by it. In addition, the statute's plain language uses the conjunction "or" between the listed offenses, and "or" is a word of limitation, not expansion. (Cf. *People v. Horner* (1970) 9 Cal.App.3d 23, 27 [words including or include followed by examples are words of enlargement, not limitation]; See, *St. Cyr v. Workers' Comp. Appeals Bd.* (1987) 196 Cal.App.3d 468, 472 [the use of the word or in a statute indicated an intention to use it disjunctively so as to designate alternative or separate categories].) Thus, the statute's plain language illustrates the voters' intent to limit the applicable offenses to those listed in the text.

Furthermore, " 'insert[ing]' additional language into a statute 'violate[s] the cardinal rule of statutory construction that courts must not add provisions to statutes. [Citations.] This rule has been codified in California as [Code of Civil Procedure] section 1858, which provides that a court must not "insert what has been omitted" from a statute.' [Citation.]" (*People v. Guzman* (2005) 35 Cal.4th 577, 587 (*Guzman*); see also *People v. Eckard* (2011) 195 Cal.App.4th 1241, 1248 [court has no power to add something to a statute to conform it to an assumed intent that does not appear from statute's language].) "Although we may partially rewrite a statute 'when compelled by necessity and supported by firm evidence of the drafters' true intent [citation], we should not do so when the statute is reasonably susceptible [of] an interpretation that harmonizes all its parts without disregarding or altering any of them.' [Citation.] We follow this

4

restrained approach to conform to the 'necessary limitations on our proper role in statutory interpretation.' [Citation." (*Guzman*, *supra*, at p. 587.) Appellant has not produced firm evidence that the drafters of the initiative intended to include section 496d within the purview of section 1170.18.

Second, even if the Act is interpreted to include an amendment to the offense of buying or receiving a stolen motor vehicle, the Act rendered certain property crimes misdemeanors only when the value of the property does not exceed $950. (See, e.g., §§ 490.2, subd. (a), 496, subd. (a).) As the person making the request to reduce the felony to a misdemeanor, appellant was required to make an initial showing that she met the requirements of section 490.2, under which she was seeking relief.[2] Appellant, as the moving party, bore the burden of demonstrating to the trial court that the value of the property taken did not exceed $950. (Evid. Code, § 500 [a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he or she is asserting].) Since appellant failed to present any evidence regarding the actual value of the vehicle, she cannot show her crime is eligible for a reduction to a misdemeanor regardless of the charge.

Finally, appellant contends that the Act must be interpreted to include an amendment to the offense of buying or receiving a stolen motor vehicle to avoid an equal protection violation. She asserts that any distinction between that offense and the crime of receiving stolen property is arbitrary. However, appellant cannot demonstrate that her conviction places her in a class of persons similarly situated to those who receive relief under the Act, since she did not present persuasive evidence that the taken vehicle was worth less than $950. Further, offenders convicted of receiving a stolen motor vehicle

---

[2] Appellant presented no definitive evidence that the value of the vehicle was under $950. Rather, she asserted that according to "the Kelly Blue Book, the approximately [*sic*] market value of the vehicle ranged between $919 and $1,295 depending on its condition." The prosecutor informed the court that the vehicle's owner had informed her office that the vehicle was valued at $1,500.

5

are not similarly situated to those convicted of receiving stolen property because the purpose of section 496d is distinguishable from the purpose of section 496, given the greater consequences associated with vehicle thefts.  Finally, even if appellant surmounts these preliminary hurdles, her claim fails because the Act passes rational basis scrutiny.

In order to prove an equal protection violation, appellant must first demonstrate that she is in the class of offenders against whom the Act discriminates.  (See *Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253 [the first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner].)  Appellant cannot do so here.

Even if appellant could show that she is a member of the class, she cannot establish that the two classes of offenders are similarly situated with respect to the purpose of the law challenged.  (*People v. Noyan* (2014) 232 Cal.App.4th 657, 666 (*Noyan*).)  "The concept of equal protection recognizes that persons who are similarly situated with respect to a law's legitimate purposes must be treated equally." (*People v. Brown* (2012) 54 Cal.4th 314, 328.)  At the same time, " '[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same.' " (*People v. Barrera* (1993) 14 Cal.App.4th 1555, 1565 (*Barrera*).)  "Neither the Fourteenth Amendment of the Constitution of the United States nor the California Constitution (art. I, § 7; art. IV, § 16) precludes legislative classification with respect to persons who are different." (*Ibid.*)  If the court determines that the distinct classes are not similarly situated, it need go no further in the inquiry.  (See, *People v. Johnson* (2004) 32 Cal.4th 260, 268.)  "Generally, offenders who commit different crimes are not similarly situated." (*People v. Doyle* (2013) 220 Cal.App.4th 1251, 1266.)

Furthermore, a statutory classification that does not apply to suspect classes or infringe upon fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational

6

basis for the classification.  (*Noyan*, *supra*, 232 Cal.App.4th at p. 667.)  Strict scrutiny of criminal statutes that provide different levels of punishment is "incompatible with the broad discretion the Legislature traditionally has been understood to exercise in defining crimes and specifying punishment."  (*People v. Wilkinson* (2004) 33 Cal.4th 821, 838 (*Wilkinson*).)  Thus, rational basis review applies here.

Under the rational basis test, "equal protection of the law is denied only where there is no 'rational relationship between the disparity of treatment and some legitimate governmental purpose.'  [Citation.]"  (*People v. Turnage* (2012) 55 Cal.4th 62, 74.)  "To mount a successful rational basis challenge, a party must ' "negative every conceivable basis" ' that might support the statutory disparity.  [Citations.]"  (*Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 881.)  "If a plausible basis exists for the disparity, courts may not second-guess its ' "wisdom, fairness, or logic." '  [Citations.]"  (*Ibid.*)  "[N]either the existence of two identical criminal statutes prescribing different levels of punishments, nor the exercise of a prosecutor's discretion in charging under one such statute and not the other, violates equal protection principles."  (*Wilkinson*, *supra*, 33 Cal.4th at p. 838.)

In *Wilkinson*, the California Supreme Court held that a statutory scheme that allowed for (i) misdemeanor prosecutions of batteries "with injury" committed on custodial officers and (ii) felony prosecutions for batteries "without injury" passed rational basis scrutiny.  (*Wilkinson*, *supra*, 33 Cal.4th at p. 839.)  The court reasoned that the Legislature's failure to repeal the felony provision of section 243.1 was to allow for felony prosecutions of more serious cases, even if no injury was inflicted.  (*Wilkinson*, *supra*, at p. 839.)  The court concluded that there was a rational basis for these statutes because the Legislature could have reasonably concluded that a prosecutor may determine that a particular offense warrants felony prosecution based on the facts of that case.  (*Id.* at p. 840.)

7

Similarly here, the drafters did not include section 496d under the Act conceivably to allow for prosecutorial discretion in charging particular defendants. The legislative decision to omit section 496d from the Act allows for felony prosecutions of more serious cases, even if the crimes' elements are similar. Prosecutorial discretion permits the People to charge a particular defendant under a particular statute based on the defendant's background, the nuances of the crime, the severity of the crime, and other factors. (*Wilkinson*, *supra*, 33 Cal.4th at p. 839.) Such discretion is consistent with the purpose behind the Act because it allows for felony prosecution of certain individuals that may present a greater danger/nuisance to society.

Vehicles play a unique role in everyday life. The theft of a vehicle has unique consequences that differentiate it as a crime from general stolen property offenses. Those consequences include the fact that there is potential for greater monetary loss due to the significant expense vehicle theft imposes on the victim of that theft. Even if a particular vehicle is worth less than $950, the expense of replacing that vehicle could run into the thousands of dollars. Since vehicles play a central role in helping to secure a livelihood for an owner—transportation to work—the inconvenience to the owner is manifestly greater than with the theft of other property. Furthermore, there is the substantial cost to legitimate businesses, such as insurance companies, that are severely negatively affected by vehicle thefts.[3] Moreover, there are substantial benefits to ancillary criminal enterprises, such as "chop shops" that profit from receiving stolen vehicles. Finally, particular communities are negatively impacted because they experience insecurity resulting from vehicle thefts. To help combat vehicle theft, the Legislature enacted section 496d to reduce a particular loss experienced by private and corporate citizens alike and provide safer streets for communities by targeting the receipt of stolen vehicles

---

[3] When something such as a purse is stolen it is highly unlikely that it and/or its contents are insured.

8

for a particular punishment and thereby limit the incentives that promote vehicle thefts.[4] Vehicles are valuable to their owners not just in terms of their monetary value because in many cases they are largely indispensable. Further, in the wrong hands stolen vehicles can be dangerous and used in other nefarious enterprises such as bank robberies and "smash and grab" store robberies when passed into those hands. Where section 496 provides a statutory basis for punishing receiving stolen property generally, the terms of section 496d, subdivision (a), limit its application to receiving, obtaining, concealing, or withholding motor vehicles, trailers, specialty construction equipment, and vessels. Thus, section 496d targets the particular unique problems associated with vehicle theft as opposed to addressing theft or receiving stolen property generally, which do not have the same sort of unique problems. The purpose of section 496d—targeting those who become involved in the business of vehicle theft—is therefore distinguishable from the purpose of section 496. As a result, those punished under section 496d are not situated similarly to those punished under section 496.

Moreover, it is conceivable that in an attempt to keep neighborhoods safe and ensure public safety, the drafters intended to leave some charging discretion to the prosecution so that the prosecution could consider all the facts underlying each offense and determine the most appropriate charge to bring against each particular offender. The disparity in treatment between those punished under section 496d and those punished under section 496 is rationally related to the particular problems that result from vehicle

---

[4] Section 496d was drafted to " 'add a section to the Penal Code to encompass only motor vehicles related to the receiving of stolen property.' " (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 2390 (1997-1998 Reg. Sess.) as amended June 23, 1998.) The bill's author explained that section 496d was intended to " 'provide [an] additional [tool] to law enforcement for utilization in combating vehicle theft and prosecuting vehicle thieves. Incarcerating vehicle thieves provides safer streets and saves Californians millions of dollars. [This proposal] target[s] persons involved in the business of vehicle theft.' " (*Ibid.*)

9

thefts and those involved in the business of vehicle theft, including those that receive stolen vehicles.

In sum, appellant's equal protection claim fails because she cannot establish she is in the class of persons she argues should receive relief, she has not demonstrated she is similarly situated to persons convicted under section 496 of receiving stolen property, and the omission of buying or receiving a stolen motor vehicle under the Act is rational.

*Disposition*

The judgment is affirmed.

                               _____

                               ELIA, J.

WE CONCUR:

_____

RUSHING, P. J.

_____

GROVER, J.

*The People v. Maciel*
H041915